J. N. Meyers *et al.* v. Sallie O. Smith.

Indian Territory—*Cherokee Nation*—*Will, not Probated in Wyandotte County.* Where the only proof of the execution, existence or probate of a supposed last will and testament of a deceased person, who resided in the Cherokee nation, Indian country, and died there, is a portion of the records of the probate court of Wyandotte county, Kansas, founded solely upon a certified transcript of a portion of the records of the district court of Coo-wee-scoo-wee district, Cherokee nation, Indian Territory; and the only proof furnished by such transcript is proof that a copy of such supposed last will and testament is found recorded in such last-mentioned records; but no certificate is attached to the record, as is required by the laws of the Cherokee nation, showing whether such supposed last will and testament was ever "proven, or not, as the case may be;" and it does not otherwise appear that the will was ever probated or proven in the Cherokee nation; and it appears that the widow of the deceased person appeared in the probate court of Wyandotte county, but only for the purpose of electing not to take under the will but to take under the statutes of descents and distributions; and it does not appear that any other person was cited, summoned or subpœnaed or appeared in such probate court, or that the original will was ever in Kansas, or that any evidence was introduced in the probate court ex-

1—50 kas.

cept the aforesaid certified transcript; and the probate court upon such appearance and transcript made the following order, to wit: "Whereupon, it is ordered and adjudged by the court that said Jane Johnnycake, widow of the said Isaac Johnnycake, deceased, be and she is entitled to one-half of the property of the testator in the state of Kansas, after the payment of all just debts of said testator and the expenses incident to the administration of said estate. Ordered that said will be and the same is approved, except as to the interest of said Jane Johnnycake as herein stated:" *Held*, That it does not appear that the will was sufficiently probated or proved to make it effectual to pass the title to property situated in Wyandotte county.

## *Error from Wyandotte District Court.*

EJECTMENT. The facts are stated in the opinion. Judgment for plaintiff, *Smith*, at the March term, 1889. The defendants, *Meyers* and others, come to this court.

*Thos. P. Fenlon*, for plaintiffs in error:

The only question in this case is, Did this instrument called a will convey to or vest in Isaac Johnnycake, jr., and Joseph Johnnycake the title to the land in controversy outside of the interest of the widow, about which there is no controversy? Upon the death of Isaac Johnnycake, the title to the land vested either in his heirs according to the laws of Kansas, or vested in his devisees, if a will was made in substantial compliance with the laws of Kansas. It is shown by the record of the probate court of Wyandotte county, that on the 27th day of September, 1877, the instrument called a will was presented to the probate court of that county for probate, and that that court ordered and adjudged that said will be approved, except as to the interest of the widow, she declining to accept under the will. Now, the probate court is a constitutional court, and while a court of limited and special jurisdiction, it is not an inferior court, and its findings and judgments unappealed from and unreversed are as binding as the judgments of any court of general jurisdiction. See *Shoemaker v. Brown*, 10 Kas. 383; *Johnson v. Cain*, 15 id. 536; *Rizer v. Gillpatrick*, 16 id. 567; *Musick v. Beebe*, 17 id. 47; *Collamore v. Wilder*, 19 id. 80; and *Smith v. Eureka*

*Bank,* 24 id. 528. These authorities establish beyond all question that the judgment of the probate court of Wyandotte county establishes beyond all controversy not only the execution of the will, but the validity thereof, passing title thereby to Joseph Johnnycake and Isaac Johnnycake, jr.

It is axiomatic that the judgment of a court of competent jurisdiction cannot be collaterally attacked. Here, then, is a will, conceded to have been made and executed by the testator, presented to a court of competent jurisdiction for probate. The judgment of that court is, that it is the will of Isaac Johnnycake, and it is conceded by the record in this case that the plaintiffs in error hold all of the title which could be made by the widow and the devisees named in the will. It seems to me wholly immaterial where this will was executed, whether in compliance with the laws of the Indian country or any other country; so that all the record in this case with reference to the laws of the Indian country is immaterial. The question now, both as to the execution and the validity of this will, is *res adjudicata,* and the court therefore erred in sustaining the objection to the offer of the will in evidence and in refusing to grant a new trial. As the will shows it was executed on the 1st day of March, 1872, and the stipulation shows that Isaac Johnnycake died on June 15, 1875, there was nothing for Sallie O. Smith to inherit.

*Hutchings & Keplinger,* for defendant in error.

If the testator had been domiciled in Kansas and had made a will here strictly in conformity to Kansas law, it would have been wholly ineffectual to convey title to land until it had been proved and admitted to probate, as required by Kansas law. Gen. Stat. of 1889, ¶ 7233. But the will being a foreign one, executed in a foreign country, by a person domiciled there, it must be primarily probated there. The Kansas statute, in our judgment, does not confer jurisdiction upon the probate court to take proof of a foreign will and admit it to probate. It has not possession of the original will, cannot summon the witnesses, and cannot grant admin-

istration upon it.   Upon the principle *expressio unius est exclusio alterius*, the statutory method ( ¶¶ 7228 to 7233) affords the exclusive method of probating foreign wills in Kansas.

We think, in addition to the statutes cited, the following other statutes bear upon and sustain this view: Gen. Stat. of 1889, ¶¶ 2785, 2812, 2929, 2932, 7207–7227.   It is clearly implied by ¶¶ 7211, 7220 and 7249 that the original will must be within the control and jurisdiction of the court taking proof of its execution, in all cases except where the will has been lost or spoliated, and for such cases special provisions are made.  Paragraph 7249, *et seq.*

Clearly the statute does not contemplate that *original* probate may be granted in Kansas upon a foreign will by merely producing a copy of it, whether certified by some "clerk" or not.   And it is the general rule that the jurisdiction of the probate of wills is vested in the courts of the testator's domicile.  3 Redf. Wills, p. 22.   See, also, Ror. Int. St. L., p. 248; 13 Ohio St., 465, 466; *Pope v. Cutler*, 34 Mich. 149, 150; *In re Capper's Will*, 52 N. W. Rep. 6; *Bailey v. Bailey*, 8 Ohio, 239; *McCormick v. Sullivant*, 10 Wheat. 192; *Gaven v. Allen*, 100 Mo. 293; *Nelson v. Potter*, 15 Atl. Rep. 375.

It is claimed that the question is *res adjudicata;* that the probate court of Wyandotte county acquired jurisdiction, and its judgment cannot be collaterally attacked.   The difficulty with this argument is, that the statement of facts upon which it is based is not true, but is in conflict with the record.   The pretended will is not "conceded to have been made," but its execution is and at all times has been disputed.   It was not presented to the probate court for probate, and the probate court did not adjudge that it was the will of Isaac Johnnycake, or render any other judgment concerning it.   If the Wyandotte probate court in this case granted probate of any paper, what was it?   Not the original will, as that was not produced.   Not a first copy of that will, as Mr. Lipe does not claim to have seen the original will, or to have made his copy direct from that.   The paper which it is claimed the

court admitted to probate was *a copy of a copy* of what is claimed to be a will. Now, how could the court know this was a copy? Only from the hearsay statement of the "clerk" of Coo-wee-scoo-wee district, and he does not claim to have made his copy from the original. No one will pretend that there is any statute making such a clerk's certificate proof of a copy of an *unprobated* foreign will, or authorizing the probate court to take cognizance of or judicial action on such a paper.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of ejectment, brought in the district court of Wyandotte county on October 27, 1887, by Sallie O. Smith against J. N. Meyers, W. R. Malott, W. Gerding (really Henry Gerding), Henry Stockhoff, G. Rothert, and L. Brougham, to recover an undivided interest in certain real estate situated in said county. The defendants answered separately, and all except Brougham claimed separate interests in the real estate, and Brougham's answer was a general denial. The case was tried before the court without a jury, and the court found generally in favor of the plaintiff and against the defendants, and that she owned an undivided one-fourteenth interest in the real estate described in her petition and rendered judgment accordingly; and all the defendants except Brougham united in bringing the case to this court on petition in error, making Sallie O. Smith the defendant in error.

All the parties claim title through and under a common source, namely, Isaac Johnnycake. He was a Delaware Indian, and also a member of the Cherokee nation of Indians. On March 1, 1872, and prior thereto, and up to the time of his death, which occurred on June 15, 1875, he resided in the Indian Territory, and was the owner of all the land described in the plaintiff's petition. At the time of his death he left a widow and seven children, one of which children is the plaintiff in this case; who, under the laws of Kansas, and as an heir of Johnnycake, is entitled to an undivided one-

fourteenth interest in all the property left by Johnnycake in Kansas, unless she was divested of such interest by a supposed will claimed to have been executed by Johnnycake at his place of residence in the Indian Territory on March 1, 1872. The sole question, then, in this case is simply whether the evidence introduced on the trial of this case in the district court showed that any such will was ever executed and probated or recorded so as to make it a valid and effective will or not. Under the statutes of Kansas, no will can pass title to any property unless it has first been duly probated or recorded; and it is claimed by the defendant in error, and tacitly admitted by the plaintiffs in error, that no will can properly be recorded in Kansas, so as to make it pass title to any property, real or personal, in Kansas, unless it has first been duly probated somewhere. Section 29 of the act relating to wills reads as follows:

"SEC. 29. No will shall be effectual to pass real or personal estate, unless it shall have been duly admitted to probate, or recorded as provided in this act."

With respect to wills executed in Kansas by persons residing and dying therein, §§ 16 and 18 of the act relating to wills read as follows:

"SEC. 16. Every will, when admitted to probate as above mentioned, shall be filed in the office of the probate court, and recorded, together with the testimony, in a book to be kept for that purpose."

"SEC. 18. If real estate, devised by will, is situated in any other county than that in which the will is proved, an authenticated copy of the will and order of probate shall be admitted to record in the probate court of each county in which such real estate may be situated, upon the order of such probate judge, and shall have the same validity therein as if probate had been had in such county."

With respect to wills executed in another state or territory of the United States, § 24 of the act relating to wills reads as follows:

"SEC. 24. Authenticated copies of wills, executed and proved according to the laws of any state or territory of the

United States, relative to any property in this state, may be admitted to record in the probate court of any county in this state where any part of such property may be situated; and such authenticated copies, so recorded, shall have the same validity as wills made in this state, in conformity with the laws thereof. When any such will or authenticated copy has been or shall hereafter be admitted to record in the probate court of any county in this state, where any part of such property may be situated, a copy of such recorded will, with a copy of the order to record the same, annexed thereto, certified by the probate judge, under the seal of his court, may be filed and recorded in the office of the probate court of any other county in this state, where any part of such property is situated; and it shall be as effectual in all cases as the authenticated copy of said will would be if proved and admitted to record by the court."

With respect to wills executed in some foreign state or country, § 25 of the act relating to wills reads as follows:

"SEC. 25. A will executed, proved and allowed in any state or country other than the United States and territories thereof, according to the laws of such foreign state or country, may be allowed and admitted to record in this state, in the manner and for the purpose mentioned in the following sections."

All the other provisions of the statutes relating to wills, and providing how they may be probated or recorded, and all the provisions of the statutes relating to executors and administrators, seem to be in harmony with the foregoing sections. Also § 1 of the act relating to probate courts, so far as it is necessary to quote it, reads as follows:

"The probate courts shall be courts of record, and, within their respective counties, shall have original jurisdiction: First, To take the proof of last wills and testaments, and admit them to probate; and to admit to record authenticated copies of last wills and testaments executed, proved and *admitted to probate* in the courts of any other state, territory, or country."

On the trial of this case, the following stipulation between the parties was introduced in evidence, to wit:

Meyers v. Smith.

"STIPULATION.

"It is hereby agreed by and between the parties plaintiff and defendants herein:

"1. That the record of the instrument purporting to be the last will and testament of Isaac Johnnycake, deceased, in the probate court of this county, is a true copy of the record of such instrument as the same appears in the book of wills in the office of the clerk of the district court of the Coo-wee-scoo-wee district, Cherokee nation, in the Indian Territory.

"2. That on March 1, 1872, and at the time of his death, Isaac Johnnycake owned a single tract of land in Wyandotte county, of which the land in controversy is a part; and that he owned no other land in said county.

"3. That Isaac Johnnycake died June 15, 1875, in the Coo-wee-scoo-wee district, Cherokee nation, Indian Territory, owning the land in controversy, and leaving the plaintiff and six other children, who together with Jane Johnnycake, the wife of said Johnnycake, were his sole heirs.

"4. That the defendants are in possession and have whatever title could have been conveyed to them by said wife and the persons named in said instrument, as legatees, and hold the same under a direct line of conveyances from the said parties.

"5. That Johnnycake was a member of the Delaware tribe of Indians, and one of the members of said tribe who afterwards became incorporated into and became members of the Cherokee nation, in the Indian Territory, under the agreement between said Cherokees and Delawares, and at the time of his death was a resident and citizen of the Coo-wee-scoo-wee district, Cherokee nation, Indian Territory."

The defendants below also introduced in evidence a portion of the records of the probate court of Wyandotte county, which reads as follows:

"LAST WILL AND TESTAMENT OF ISAAC JOHNNYCAKE, DECEASED.

"LIGHTNING CREEK, I. T., March 1, 1872.

"Last will and testament of Isaac Johnnycake, deceased.

"Considering the uncertainty of this mortal life, and being of sound mind and memory (blessed be the Almighty God for the same), do make and publish this, my last will and testament, in the manner and form following, to wit, that is to say:

"I give and devise to my sons, Joseph and Isaac Johnny-

cake, jr., their heirs and assigns, all that tract or parcel of land situated, lying and being in the state of Kansas, Wyandotte county, together with all improvements, houses, etc., and appurtenances belonging thereto, or in any wise appertaining : To have and to hold the premises above described, to the said Joseph and Isaac Johnnycake, jr., their heirs and assigns forever, to be divided equally between them, share and share alike.

"In witness whereof, I have hereunto set my hand and seal, this the 1st day of March, in the year of our Lord one thousand eight hundred and seventy-two.

[ Signed ]     ISAAC JOHNNYCAKE.    [L. S.] "

"The foregoing instrument was at the time thereof signed and sealed, published and declared, by the said Isaac Johnnycake, as for his last will and testament, in presence of us, at his request and in his presence, and in presence of each other, have subscribed our names, as witnesses thereto.

[ Signed ]     SAM. D. LOVE,
WM. R. KETCHUM.

"Subscribed in my presence and sworn to before me, this the 4th day of May, 1877. In witness whereof, I have hereunto signed my name and affixed my official signature, the day and year last above written.

[ Signed ]     WM. R. KETCHUM.  [L. S.] .

"CHARLES ROGERS,
"*Judge District Court Coo-wee-scoo-wee District, Cherokee Nation.* .

"Subscribed in my presence and sworn to before me, this the 17th day of July, 1877. Witness whereof, I have hereunto signed my name and affixed my official signature.

"CHAS. ROGERS,      [ Signed ]     SAM. D. LOVE.
"*Judge District Court, Coo-wee-scoo-wee District.*"

"I HEREBY CERTIFY, That the foregoing is a correct and true copy of the last will and testament of the late Isaac Johnnycake, (deceased,) as recorded in this office.

" Given from under my hand and seal of office, this the 23d day of August, A. D. 1877.     D. W. LIPE,
[SEAL.]    *Clerk Coo-wee-scoo-wee District, Cherokee Nation.*"

"IN THE MATTER OF THE ESTATE OF ISAAC JOHNNYCAKE, DECEASED.

"JULY TERM, A.D. 1887.—September 27, A.D. 1887.

"Now, This day appears in open court, Jane Johnnycake, the widow of the late Isaac Johnnycake, deceased, who died

on or about the — day ——— A. D. 1875, leaving a last will and testament, a copy of said last will and testament duly certified to by D. W. Lipe, clerk of the district court of Coo-wee-scoo-wee district, Cherokee nation, as recorded in the district clerk's office of said district, having been filed in this court, and recorded as the last will and testament of Isaac Johnnycake (deceased). And Jane Johnnycake, the widow of said deceased, being requested to make her election whether she will accept the provisions of said last will and testament or take what she is entitled to under the provisions of law concerning descents and distributions, the said Jane Johnny-cake, widow aforesaid, then and there elected not to accept the provisions of said last will, but to take under the provisions of law concerning descents and distributions.

"Whereupon, it is ordered and adjudged by the court that said Jane Johnnycake, widow of the said Isaac Johnnycake, deceased, be, and she is, entitled to one-half of the property of the testator in the state of Kansas, after the payment of all just debts of said testator and the expenses incident to the administration of said estate.

"Ordered, that said will be and the same is approved, except as to the interest of said Jane Johnnycake as herein stated.    [Signed]    D. R. CHURCHILL, *Probate Judge.*"

The defendants below also introduced in evidence a duly certified transcript of certain matters appearing of record in the office of the clerk of the district court within and for Coo-wee-scoo-wee district, Cherokee nation, Indian Territory, which matters were certified to be "a full, true and correct copy of *all the proceedings* in the matter of the filing, probating and recording of the last will and testament of Isaac Johnnycake, deceased, as the same appears in my (the clerk's) office." All that there is of substance in this certified transcript is what purports to be a copy of the last will and testament of Isaac Johnnycake, deceased, which in words and figures is the same as that contained in the records of the probate court of Wy-andotte county above given. There is no finding or order or judgment of any court or judge contained in such transcript. It appears from the evidence introduced on the trial that under the laws of the Cherokee nation a will may be recorded

before it is probated.   Such laws also contain the following
provision:

"Each clerk shall keep a set of books, one of which shall
be separately devoted to each of the following matters of rec-
ord, to wit:   .   .   .   4th. Wills purporting to be of deceased
persons, verbal or written, as proven or attempted to be proven
to the satisfaction of the district judge, with a certificate at-
tached to the record that the will has been so proven or not,
as the case may be."

No such certificate as is contemplated in the foregoing pro-
vision can be found in the record in the present case, and
there is nothing else in the record tending to show that the
will was ever probated in the Indian Territory or anywhere
else outside of Kansas; but as the plaintiffs in error, defend-
ants below, do not seem to claim that the will was ever pro-
bated in the Indian Territory or anywhere else outside of
Kansas, nothing further need to be said upon this subject.

The plaintiffs in error, defendants below, now claim that
the will was probated in the probate court of Wyandotte
county in this state.   They do not claim that this was an an-
cillary probate of the will, founded upon an original probate
thereof at the place of the testator's domicile in the Indian
country where the will had been executed, and where the tes-
tator died; but it is claimed that the probate was an *original*
probate in Wyandotte county, and such a probate as might
have taken place in that county if the testator had all his life-
time resided in that county, had executed the will there, and
had died there.   There are many objections urged against
this view of the case.   (1) It is objected that the probate
court of Wyandotte county had no jurisdiction to grant an
*original* probate of a will executed outside of Kansas, as this
will was; and it is also objected that such probate court never
intended or attempted to grant any such probate, and did not
do so.   (See the statutes already cited, and the order of the
probate court.)   (2) The probate court of Wyandotte county
did not have jurisdiction or custody of the original instru-
ment called a will, and had no power to procure the legal

custody of the same; for it does not appear that the will has ever been in Kansas. The action of such probate court upon this matter was founded merely upon a certified transcript of a foreign record of such supposed will—merely upon a copy of a copy thereof. And it is not claimed that the original was lost, spoliated, or destroyed. (See §§ 45 to 49 of the act relating to wills.) (3) The probate court of Wyandotte county had no jurisdiction of the witnesses to the will and no power to procure their attendance; for it does not appear that any one of such witnesses has ever been in Kansas. (4) When the supposed probate of this supposed will took place in Wyandotte county, no one appeared as a party or a witness, or otherwise, except Mrs. Jane Johnnycake, who appeared for the purpose of repudiating the will and to elect to take her interest in the property of her deceased husband in opposition to the will, and under the statutes relating to descents and distributions; and no other person was cited, summoned or subpœnaed; and no one asked that the will should be probated or approved. (5) There was in fact no such hearing before the probate court as is required for the original probating of a will, and no hearing at all except that the probate court heard Mrs. Johnnycake's election and her rejection of the will. Nothing was said or done by the probate court at this time or at any other time that can be claimed to mean the original probating of a will except the use of the following words, to wit: "Ordered, that said will be and the same is approved, except as to the interest of said Jane Johnnycake as herein stated."

Evidently the probate court did not intend or believe that this order or any order made by such court was an original probating of the supposed will; and we do not think that it was. (See all the statutes upon this subject, including the act relating to wills, §§ 3 to 16.) We might here say that *there is no statute in Kansas* which in terms would authorize a will, not executed in Kansas nor by a person residing therein nor dying therein, to be probated originally in Kansas, and all the implications of the statutes are against any such probat-

ing of any such will. Under the statutes of Kansas, a will may be deposited in the office of the probate judge during the testator's lifetime, but *only* "in the county in which the testator lives." (Act relating to Wills, § 3.) If, when the will is opened by the probate court after the testator's death, it appears that "the jurisdiction belongs to any other court," such will, *the original instrument,* must be taken to such other court, and "be presented for probate in such other court." (Ibid. § 6.) And original letters testamentary can be granted only in the county of which the testator was "an inhabitant or resident at the time of his death," (Act relating to Executors and Administrators, § 1,) except perhaps in cases where the probate, if we call it a probate, is only a second or ancillary probate of the will. (Act relating to Wills, § 28.) If the will has been deposited in the office of the probate judge during the testator's lifetime, and the probate court on opening it after the testator's death finds that the jurisdiction to probate it belongs to the court opening it, then the *executors named* in the will, or, if none are named therein, then two other persons immediately interested in the will, must be notified. (Ibid. § 6.) If the will has not been deposited in the probate court during the testator's lifetime, then the first and essential prerequisite to any valid act for the purpose of admitting the will to probate is to get the original instrument into court; and for this purpose the court is given the power to resort to attachment, arrest, imprisonment and other summary remedies. (Ibid. §§ 7–14. See, also, § 30.) After obtaining the possession of the original will, "the court shall cause the witnesses to such will, and such other witnesses or any person interested in having the same admitted to probate as may desire, to come before such court, and said witnesses shall be examined in open court, and their testimony reduced to writing and subscribed by them and filed." (Ibid. § 12.) But "if it shall appear to the court, when the will is offered for probate, that any witness thereto *has gone* to parts unknown," the will may be probated upon other satisfactory proof. (Ibid. § 13.) And upon the whole of the evidence,

"if it shall appear that such will was duly attested and exe-
cuted, and that the testator at the time of executing the same
was of full age and sound mind and memory, and not under
any restraint, the court shall admit the will to probate."
(Ibid. § 15.) And the will, the original instrument, "when
admitted to probate as above mentioned, shall be filed in the
office of the probate court and recorded, together with the
testimony, in a book to be kept for that purpose." (Ibid.
§ 16.) And if it should be desired to use the will in any
other jurisdiction, "a *copy* of such recorded will, with a *copy*
of the order of probate annexed thereto," or "an authenti-
cated *copy* of the will and order of probate," and not in any
case the original instrument itself, may be used. (Ibid. §§ 17,
18.) The original will must remain where it is originally
probated. In all proceedings for the original probating of a
will, it is contemplated by law, as follows from unavoidable
implication, that the will itself, the original instrument, must
be presented to and filed in the probate court. If, however,
the will has been lost or spoliated or destroyed, a different
procedure is had. (Ibid. §§ 45–49.) In such a case different
and additional proof is offered, and "if the court, upon such
proof, shall be satisfied that such last will and testament was
duly executed in the mode provided by the law in force at the
time of its execution, that the contents thereof are substan-
tially proven, and that the same was unrevoked at the death
of the testator, and has been lost, spoliated or destroyed sub-
sequently to the death of such testator, such court shall find
and establish the contents of such will as near as the same
can be ascertained, and cause the same and the testimony taken
in the case to be recorded in said court." (Ibid. § 48.) In
all cases where the will has been executed outside of Kansas,
by a non-resident of Kansas, both at the date of the execu-
tion of the will and at the date of his death, a still different
procedure is contemplated by the statute relating to wills.
(Ibid. §§ 24–28.) In such a case the statutes of Kansas
contemplate that the will shall be originally probated at the
foreign domicile of the testator; and shall, afterward, upon a

duly-authenticated copy of the will and of the foreign probate, and upon other proper proof presented to the probate court in any county in Kansas where any property left by the testator may be situated, be there recorded and be made effectual to pass the title to such property. Such a proceeding, however, in Kansas, if it can be called a probate at all, is only an *ancillary* probate and not an *original* one.

Mr. Redfield, in his work on Wills, (vol. 3, § 2, subdiv. 1,) uses the following language:

"The jurisdiction of the probate of wills, and everything pertaining to the settlement of estates, is, primarily, exclusive in the probate court for the district in which the testator is domiciled at the time of his decease. This general rule is of such universal acceptance in all the American states as scarcely to require any authority in its confirmation."

(See, also, Ror. Int. St. L., p. 248; and *In re Capper's Will*, decided by the supreme court of Iowa, May 13, 1892, 52 N. W. Rep. 6.)

It must be remembered that in this case no proof of the execution or existence of the will in question was introduced in the district court of Wyandotte county except a portion of the records of the probate court of such county and a certified transcript of a portion of the records of the district court of the Coo-wee-scoo-wee district, Cherokee nation, Indian country. No original will was produced, and it does not appear that the original will was ever in Kansas, and no witness testified that he ever saw the original will. The proof of the will furnished by the records of the probate court of Wyandotte county is founded solely upon the records of the district court of Coo-wee-scoo-wee district, Cherokee nation, Indian Territory, and the only proof of the will furnished by these last-mentioned records is that a copy of the supposed will is found recorded in such records; but no certificate is attached to the record, as is required by the laws of the Cherokee nation, showing whether such supposed will was ever "proven or not, as the case may be."

Upon all the facts of this case, we think it must be held that the will was not sufficiently probated or proved to make it effectual to pass title to property situated in Wyandotte county; and therefore the judgment of the court below was right, and it will be affirmed.

*Indian Territory—Cherokee nation—will, not probated in Wyandotte county.*

All the Justices concurring.