VERNON J. PARNELL, *as Executor and Administrator, etc., Appellee,* V. C. A. THOMPSON AND W. A. COTTRELL, *Appellants,* AND JOHN MARRIAGE, *Appellee.*

No. 16,113.

SYLLABUS BY THE COURT.

1. WILLS—*Foreign—Probate—Jurisdiction.* The statutes conferring jurisdiction on probate courts to allow and admit to record authenticated copies of foreign wills executed and proved according to the laws of any state or territory of the United States or of any country other than the United States and the territories thereof, and giving to such copies, when so allowed and recorded, the same effect as if the original will had been proved here, were not intended to deny such courts jurisdiction to probate an original will executed in a foreign state or country which disposes of property situated here.

2. ——— *Alien—Separate Wills—Probate.* A resident of England executed two wills, one known as the English will, relating solely to property in England, and the other known as the American will, relating solely to property situated in Kansas. The testator died in England. The English court admitted the English will to probate. The American will was never probated there, but the original thereof was brought to Kansas and probated in the probate court of the county where real estate and personal property belonging to the deceased was situated. The will was executed and attested in accordance with the laws of Kansas, and disposed of property situated here in a form not repugnant to the laws or policy of the state. *Held,* that the probate court had jurisdiction to probate the original will.

3. ——— *Separate and Distinct Wills—Validity.* Where a testator executes two separate and distinct wills, one relating solely to property at his domicile and the other relating solely to property situated in a foreign state or country, both are valid if executed, attested and proved in accordance with the laws of the place where the property disposed of is situated.

4. PARTNERSHIP—*Survival—Death of a Member—Administrator.* When an application is presented to the probate court for the appointment of an administrator of a surviving partnership, and the court finds the existence of the facts authorizing it to exercise jurisdiction, the action of the court in making the appointment is not subject to collateral attack.

5. ——— *Dissolution — Administration.* The evidence in this case examined and held sufficient to warrant a decree dissolving a partnership and ordering the partnership estate settled in the probate court.

Appeal from Kiowa district 'court; SAMUEL R. PETERS, judge *pro tem.* Opinion filed November 6, 1909. Affirmed.

### STATEMENT.

HERBERT MARRIAGE, a resident of Moulsham Lodge, Chelmsford, in the county of Essex, England, departed this life at his residence on the 12th day of September, 1904, leaving two separate and distinct wills, one of which is known as the English will and the other as the American will. The American will contained a declaration that it related solely and exclusively to the testator's property in the United States of America, and not elsewhere. It named as executors a son of the testator, Herbert J. Marriage, of Alberta, Canada, Walter Hilliard, of Chelmsford, England, and Vernon J. Parnell, of Mullinville, Kan., and bequeathed to them all his real and personal property in the United States upon trust to convert the same into money, to be held upon further trust for certain purposes mentioned in the will. The English will disposed of all his property in that country, and was probated there. The American will was never probated in England. The original American will was afterward brought to Kansas and probated here under the circumstances hereinafter mentioned.

Herbert Marriage in his lifetime was the owner of a large amount of real and personal property situated in Kiowa county, Kansas. Defendant John Marriage, of Mullinville, Kan., is a nephew of the deceased, and owned a large tract of land adjoining the land owned by the deceased.

On the 12th day of October, 1903, Herbert Marriage and John Marriage entered into a partnership contract to carry on the business of stock raising and farming on what was known as the Eagle Canon ranch, in Kiowa

county. By the terms of the contract each contributed to the business as capital, either in cash or land or other property, the sum of $30,000, and each was to share equally in the profits or losses of the enterprise. The property owned by the partnership consisted of about 10,000 acres of land, which was held by the partners under deeds conveying to each of them an undivided interest, and a large amount of cattle, hogs, and farming implements. The articles of agreement provided that the partnership was to continue for a term of seven years, terminating March 1, 1911. By the terms of the contract John Marriage was to manage and superintend the business of the partnership, and to furnish Herbert Marriage on the first day of March in each year a statement showing the accounts of the concern, the stock on hand, and the value thereof. From the time the partnership was formed John Marriage continued in possession of the property and conducted the affairs of the partnership as manager until after the death of Herbert Marriage. John Marriage was given a year's option from March 1, 1904, to purchase the interest of Herbert Marriage in the partnership. The contract contained the following provision:

"In case of the death of Herbert Marriage before the expiration of this contract then this contract shall be carried out by his executors to the same extent as if the said Herbert Marriage were living."

A few months after the death of Herbert Marriage, and on the 2d day of November, 1904, more than a year prior to the probate of the American will, John Marriage entered into a written contract with defendant C. A. Thompson, by which he leased to Thompson all the property of the ranch of every kind or description for a period of six years, terminating March 1, 1911. Under this contract Thompson was to manage the business, and John Marriage turned over the possession of the ranch and all the property of the partnership to him.

In the spring of 1905, and about the time of the expiration of the option which John Marriage held for the purchase of his deceased partner's interest, the defendants, John Marriage, C. A. Thompson and W. A. Cottrell, undertook to purchase the entire interest belonging to the heirs of Herbert Marriage, deceased, in the partnership business and in the ranch, and for that purpose sent John Marriage to England. He obtained from Walter Hilliard, the resident executor of the English estate, an option in writing for the purchase of the interest of the deceased in the partnership property which provided that if the conditions of the option were carried out the partnership agreement should be dissolved. The conditions were never complied with and the option expired.

In the month of November, 1905, Vernon J. Parnell, a resident of Kansas and the only one of the executors named in the American will who was a resident of the United States, presented the original American will to the probate court of Kiowa county for probate; and thereafter, on the fourth day of January, 1906, the same was probated, and Vernon J. Parnell qualified as sole executor. Letters testamentary were issued to him by the probate court, and he gave bond and qualified as executor. Parnell, as executor, requested John Marriage to qualify and act as surviving partner and give bond as required by law. John Marriage refused, for the reason that the property was in control of defendant Thompson. Thereafter John Marriage was cited to appear in the probate court of Kiowa county and requested to give bond and qualify as surviving partner. On his refusal, an order was made by the probate court appointing Vernon J. Parnell as administrator of the partnership property. He gave the bond as required by law and undertook to administer upon the partnership property. He requested John Marriage to make a statement of the condition of the property in compliance with the terms of the partnership articles. John Mar-

riage failed to comply with this request, stating as a reason that it was impossible to do so because Thompson was in possession of the partnership property.

Thereupon, and during the year 1906, Vernon J. Parnell, as executor of the estate of Herbert Marriage, deceased, and as administrator of the partnership estate of John Marriage, surviving partner of Herbert Marriage, deceased, brought three suits in the district court of Kiowa county, two against defendant C. A. Thompson, and the third against defendants John Marriage, C. A. Thompson and W. A. Cottrell. In the first it was alleged that C. A. Thompson held the legal title to certain land in Kiowa county in trust for the partnership estate, and a decree was asked ordering a conveyance for the use and benefit of the partnership. The second suit against Thompson was for an injunction to restrain him from interfering with the possession of the plaintiff as executor of Herbert Marriage, deceased, and as administrator of the partnership estate, and from disposing of or converting any of the property ·of the partnership to his own use. The third suit was against the three defendants, and asked for a decree dissolving the partnership theretofore existing between the estate of Herbert Marriage, deceased, and John Marriage, and for a full and final accounting of the partnership business, and a further decree settling and determining the rights of the defendants to the partnership property and the possession thereof. A receiver was appointed to take charge of the property during the pendency of the suits. The several answers of the defendants denied the right of the plaintiff to maintain the actions, either as executor of the estate of Herbert Marriage, deceased, or as administrator of the surviving partnership, alleging that the probate court of Kiowa county was without jurisdiction to probate the American will and that all proceedings in relation thereto were void, and that under the terms of the partnership agreement the probate court had no jurisdiction to appoint an ad-

ministrator of the partnership estate, for the reason that the partnership by the terms of the contract continued after the death of Herbert Marriage and was not to terminate until March 1, 1911.

Defendant C. A. Thompson denied that he held the title to any of the real estate in trust for the partnership, and alleged that he had purchased it with his own funds and had taken the title in fee simple.

The three suits were afterward consolidated and tried to the court, and separate findings of fact and conclusions of law were made.

Among the facts found are that Thompson was in possession and control of the ranch and partnership business from the time he moved there with his family, in November, 1904, and that the representatives of the estate of Herbert Marriage had no knowledge of the various contracts made by the defendants until a short time prior to the institution of the suits and never consented to or ratified the action of John Marriage in making the contract with Thompson; that Thompson brought cattle of his own to the ranch and mingled them with the partnership property, and the cattle were sold together and the proceeds deposited to the credit of Marriage & Thompson without any separate accounts being kept; that Thompson sold other property of the partnership and placed the proceeds to his individual credit at the bank; that the indebtedness of the ranch increased during his management from $3000 to $6800, to secure which John Marriage and C. A. Thompson, in November, 1905, executed a chattel mortgage on the partnership property.

As conclusions of law the court found that the probate court had jurisdiction to admit the original will to probate, and that the plaintiff as the representative of the estate had the right to institute the suits; that the contract entered into between the defendants for the purchase of the Herbert Marriage interest in the ranch was void for want of power on the part of John Mar-

Parnell v. Thompson.

riage to make it, and of no effect against the plaintiff because the contract was inimical to the Herbert Marriage estate and made through fraud and collusion of the defendants; that the contract entered into between John Marriage and C. A. Thompson was void because made without authority on the part of John Marriage and because of the fraudulent representations on the part of Thompson; that the title to the two quarter sections of land was held by Thompson in trust for the use and benefit of the partnership; and that the acts and conduct of John Marriage in making the several contracts in fraud of the interest of the deceased partner's estate, and the mingling of the property of other persons with the ranch property and placing the partnership property and business out of his own control, were sufficient to authorize a decree dissolving the partnership.

Judgment was accordingly entered granting the relief prayed for, and the partnership property was ordered turned over to the plaintiff as executor of the last will and testament of Herbert Marriage, deceased, and as administrator of the partnership estate, to be dealt with as provided by law under the orders of the probate court. The defendants filed exceptions to the conclusions of fact and of law, which were overruled. Their motion for a new trial was denied, and defendants Thompson and Cottrell bring the case here for review.

*B. F. Milton,* and *Carr W. Taylor,* for the appellants.
*John D. Beck, A. C. Mitchell,* and *S. D. Bishop,* for appellee Vernon J. Parnell; *L. M. Day,* for appellee John Marriage.

The opinion of the court was delivered by

PORTER, J.: The making of two wills by a testator, one disposing of his property at his domicile and the other of his property situated in a foreign country, although unusual, has undoubtedly the sanction of law,

and there would seem to be no inherent objection to the validity of either, where each is separate and distinct and otherwise in conformity with law. (1 Underhill, Law of Wills, § 284.) The validity of such wills has been recognized in England. (*In the Goods of Astor* (1876) L. R., 1 Prob. Div. 150; *In the Goods of Murray* (1896) L. R., Prob. Div. 65.)

The important question to be determined is whether the probate court had jurisdiction to admit to probate the original will of Herbert Marriage, the will not having been first probated in the courts of his domicile. The granting of letters testamentary or of administration by the probate court is the exercise of judicial authority. If regular in form, the letters are *prima facie* evidence of the regularity of prior proceedings, but are absolutely void if the court making the appointment had no jurisdiction. (*Perry, Adm'r, v. St. J. & W. Rld. Co.*, 29 Kan. 420; *Estate of Mallory v. B. & M. R. Rld. Co.*, 53 Kan. 557; *Railway Co. v. Bennett*, 58 Kan. 499; *Ewing v. Mallison*, 65 Kan. 484.)

After the case was tried, and before judgment, the plaintiff by leave amended his reply and averred that under the laws and practice in England a subject or resident citizen thereof is authorized to dispose of his property in any other jurisdiction or country by a will separate and distinct from his will disposing of his property in England; that under the laws of England, when separate wills of this character are made, each reciting that it is to be executed and administered independent of the other, the courts of England hold that the only courts having jurisdiction to probate such wills are the courts of the country in which the property disposed of is located, and that in such cases the courts of England have refused probate of the will disposing of property in a foreign jurisdiction; and, further, that where a citizen of the United States has made two wills, separate and distinct from each other, one disposing of his property in the United States and

Parnell v. Thompson.

the other disposing of his property in England, the courts of England, in recognition of the comity existing between nations, have permitted the independent will covering property in England to be probated there. It is said in the brief that all these allegations were established to the satisfaction of the court, and that the court made findings of fact thereon, but the court merely found that the American will was never proved or admitted in the courts of England, and no finding was made in reference to what the laws of England are in respect to the matters referred to in the reply. Our attention has. not been called to any evidence offered for the purpose of proving the averments. We are referred to numerous decisions of the English courts, which we are at liberty to consider as precedents, but not in proof of the fact as to what the laws of England are. We take judicial notice of the laws of another state or of a foreign country for the purpose of aiding us in ascertaining and determining the laws of this state on a particular subject, but can not do so for any other purpose. (*Railway Co. v. Hutchings,* 78 Kan. 758.) Looking to the provision of our own laws, we find that section 8 of article 3 of the constitution provides:

"There shall be a probate court in each county, which shall be a court of record, and have such probate jurisdiction and care of estates of deceased persons, minors, and persons of unsound minds, as may be prescribed by law."

Section 1974 of the General Statutes of 1901, so far as applicable to the present case, reads:

"The probate courts shall be courts of record, and, within their respective counties, shall have original jurisdiction: First, to take the proof of last wills and testaments, and admit them to probate, and to admit to record authenticated copies of last wills and testaments executed, proved and admitted to probate in the courts of any other state, territory or country; . . . seventh, to have and exercise the jurisdiction and au-

thority provided by law respecting executors and administrators, and the settlement of the estates of deceased persons."

Section 2806 of the General Statutes of 1901, respecting executors and administrators, reads:

"That upon the decease of any inhabitant of this state, letters testamentary or letters of administration on his estate shall be granted by the probate court of the county in which the deceased was an inhabitant or resident at the time of his death; and when any person shall die intestate in any other state or country, leaving any estate to be administered within this state, administration thereof shall be granted by the probate court of any county in which there is any estate to be administered; and the administration which shall be first lawfully granted in the last-mentioned case shall extend to all the estate of the deceased within this state, and shall exclude the jurisdiction of the probate court in every other county."

Construing the first part of the section just quoted, it has been held that where the deceased is a resident of this state the probate court of a county has no jurisdiction over the estate unless the deceased, at the time of his death, was an inhabitant or resident of that county, and that the true place of residence of the deceased at the time of his death may be shown for the purpose of disproving jurisdiction, where the probate court has assumed jurisdiction to administer the estate. (*Ewing v. Mallison,* 65 Kan. 484.)

In sections 7937 *et seq.* of the General Statutes of 1901, relating to wills, are found the provisions concerning foreign wills. Section 7961 provides that authenticated copies of wills executed and proved according to the laws of any state or territory of the United States relating to property in this state may be admitted to record in the probate court of any county in this state where such property may be situated, and the authenticated copies so recorded shall have the

Parnell v. Thompson.

same validity as wills made in this state. Section 7962 reads:

"A will executed, proved and allowed in any state or country other than the United States and territories thereof, according to the laws of such foreign state or country, may be allowed and admitted to record in this state in the manner and for the purpose mentioned in the following sections."

Section 7963 provides that "a copy of the will and probate thereof, duly authenticated, shall be produced by the executor or by any person interested therein, to the probate court of the county in which there is any estate upon which the will may operate." Section 7964 provides that after the instrument is allowed and recorded the will, the probate and the record thereof shall then have the same force and effect as if the will had been originally proved and allowed in the same court in the usual manner. Section 7965 provides for granting letters testamentary or of administration after allowing and admitting to record a will pursuant to the four preceding sections.

The appellants insist that it was the intention of the legislature in the adoption of the sections we have cited to make it mandatory on the heirs and devisees of a testator under a foreign will to probate the will first at the domicile of the testator, and it is urged as reasons which probably actuated the legislature in so providing that it is easier to secure witnesses acquainted with the deceased and his handwriting at the place of his domicile; that if original foreign wills were permitted by law to be probated in any county in this state where the testator left property, persons interested in the estate would be put to great expense in taking foreign depositions for the purpose of proving the will, and many opportunities would be afforded for fraud. The principal argument is that the method specifically provided by statute for admitting to record authenticated copies of a foreign will proved in the foreign

jurisdiction is exclusive, and amounts to a limitation on the jurisdiction of probate courts. Some slight support for the appellants' contention is found in language used in the opinion in *Meyers v. Smith,* 50 Kan. 1. In that case the instrument called a will, which it was claimed was executed by Isaac Johnnycake, was presented to the probate court of Wyandotte county, and that court ordered the will approved. The original instrument, however, was not produced, and the alleged probate was founded merely upon a certified transcript of a will executed in the Indian Territory and recorded in the office of the clerk of the United States district court of the territory, probably for safe-keeping. At all events, there was no proof that it had ever been probated at the domicile of the testator, and it was said in the opinion that the probate court evidently never intended nor believed that the order it made was an original probate of the will. In the opinion Mr. Justice Valentine used this language:

"We might say here that *there is no statute in Kansas* which in terms would authorize a will, not executed in Kansas nor by a person residing therein nor dying therein, to be probated originally in Kansas, and all the implications of the statutes are against any such probating of any such will." (Page 12.)

The language quoted, however, was not necessary to the decision. As observed, the original will was never in Kansas and it did not appear that there was any evidence before the probate court except the certified transcript, and the case turned on the fact that the will was not sufficiently probated or proved. The same question has often been decided, which is that an exemplified copy of a foreign will, although authenticated according to the act of congress by the official custodian of wills in a foreign jurisdiction, is not sufficient to prove a testamentary title to lands, without an exemplification of the judgment of some court of

competent jurisdiction admitting the will to probate. (*Fenderson v. Mo. Tie & Timber Co.,* 104 Mo. App. 290.)

The question under consideration here has never been determined by this court. That a plain distinction is made in the statutes between a domestic will, which must be probated, and a foreign will, which may be admitted to record, must be conceded, and also that there is no provision in our statutes anywhere providing in express terms for the original probate of a foreign will in this state. The usual practice has always been for the original probate to be made in the foreign state or country, at the domicile of the testator, and, upon an authenticated copy showing probate there, for ancillary probate to be made here.

The sections from 7961 to 7965 of the General Statutes of 1901 all relate expressly to wills *"executed, proved and allowed"* in any state or country other than the United States. We have to determine, therefore, whether the fact that the statutes expressly provide for the allowance and admission to record in this state of an authenticated copy of a will duly probated in any state or country other than the United States was intended as a limitation on the jurisdiction of the probate court and excludes the power of that court to grant original probate of a foreign will. The reasons urged in support of that construction are far from satisfactory. It is frequently found necessary in the original probate of a domestic will for the probate court to send a commission to a foreign country or to another state to procure the testimony of a subscribing witness who is beyond the jurisdiction of the court. So far as the likelihood of fraud on the court being perpetrated, the advantage would seem to be all in favor of the domestic court, which judicially determines for itself whether the will has been duly executed and is entitled to probate, instead of relying upon certified copies of proceedings in the courts of a foreign state. The conten-

tion of the appellants requires us to assume that the legislature attached more importance to an authenticated copy of a will than to the original instrument itself. The original is always the better evidence. Does the fact that the legislature provided an elaborate scheme for the allowance and recording here of the copy of a foreign will which had been originally probated in the foreign state or country and failed to make any express provision for the original probate here of such a will compel the conclusion that it intended thereby to limit the general jurisdiction of probate courts to take the proof of last wills and admit them to probate? We think not. The conclusion that we have reached is that the statute was not so intended; that its purpose was to enlarge, not to restrain, the jurisdiction of the probate court.

While probate courts are sometimes spoken of as courts of limited jurisdiction, they have jurisdiction over certain peculiar, exclusive subjects, and their jurisdiction is limited only in the sense that it is confined to the particular subject matter, but within their province they are courts of general jurisdiction. (*Howbert v. Heyle,* 47 Kan. 58; *Higgins v. Reed,* 48 Kan. 272; 23 A. & E. Encycl. of L. 116.) The existence of property within the state belonging to the estate of a deceased person is the fact which gives jurisdiction to the probate court, and the principle is of universal application that "every state has plenary power with respect to the administration and disposition of the estates of deceased persons as to all property of such persons found within its jurisdiction." (*Estate of Clark,* 148 Cal. 108, 112. See, also, *Shields v. Life Insurance Company,* 119 N. C. 380; *Putnam v. Pitney,* 45 Minn. 242.)

A statute of Minnesota authorized the probate of a will executed according to the laws of that state, whether previously probated in another state or not, and without reference to the domicile of the testator.

In *Putnam v. Pitney,* supra, referring to the power of
the probate courts of the state over the estate of a de-
ceased person within the state who was domiciled out
of it, Mr. Justice Mitchell used this language:

"This power over the estates of deceased persons
situate within its jurisdiction is inherent in any state
or county on common-law principles of which the pro-
visions of the probate code in that regard are but
declaratory."    (Page 245.)

In volume 23 of the American and English Encyclo-
pædia of Law, at page 116, it is said:

"The jurisdictional fact is the existence of assets
within the state.   Under such circumstances, the pro-
bate court of the county in which the property is situ-
ated has jurisdiction in the premises, and even the
original probate may be had in that county, though, as
a general rule, a will should be proved in this first in-
stance at the testator's domicile."

In the statute conferring jurisdiction (Gen. Stat.
1901, § 1974) the word "probate," as it is used, ap-
plies solely to original wills, and the copies of wills
properly authenticated are not admitted to probate, but
are admitted to record.   It must, therefore, have been
the intention of the section to give the probate courts
the same authority which all courts of probate had at
the common law.   Nor could it subserve any useful pur-
pose first to require the will to be proved in the foreign
jurisdiction before it can be admitted here.   At the
common law the probate of a will in one state was of no
validity whatever as affecting the title to lands in an-
other.   (*Robertson v. Pickrell,* 109 U. S. 608.)   The law
of the place where real estate is situated governs the
formality of the transfer of such property, and at com-
mon law the original will could be probated wherever
there was real property devised thereby.   (*M'Cormick
v. Sullivant,* 10 Wheat. [23 U. S.] 192; *Robertson v.
Pickrell,* supra.)   But it was often difficult to procure
the original will after it had been probated in the
courts of the domicile of the testator, and the evident

purpose of the statutes in the various states authorizing copies of wills and their probate in a foreign country or sister state to be recorded and to have the same effect as the original was to overcome the hardships which often occurred by reason of the fact that the original will, having been probated at the place of the testator's domicile, could not be had for original probate. The statutes, therefore, must have been designed to enlarge, not limit, the original jurisdiction which probate courts always exercised at the common law to probate the original will regardless of where it was executed. The authorities, while not numerous, support this view.

In *Varner, ex'r, v. Bevil et al.,* 17 Ala. 286, the question determined was in all respects the same as that presented here. The will of Samuel Varner was made in the state of Mississippi, where he was domiciled at the time of his death. He owned real estate and personal property in Alabama, and the sole question was whether there could be an original probate of the will in the courts of Alabama before the will had been proved in Mississippi. So far as appears in the opinion, the jurisdiction of the orphan's court there was the same as our probate court. It was contended there, as here, that the court was of limited jurisdiction, that the statutes authorizing the admission and allowance of authenticated copies of foreign wills that had been proved in a foreign jurisdiction were a limitation on the power of the court, and that the probate court was without jurisdiction to admit the original will to probate. In the opinion it was said:

"The statutes of this state make no express provision for cases of this kind. They authorize authenticated copies of wills, proved according to the laws of any of the United States, and which embrace or concern property within this state, to be proved and recorded subject to be contested and controverted, as the original will might be if offered. . . . We must then recur to the general law, as recognized by the code of international comity, for the rules which must guide us in

arriving at a correct conclusion. . . . Our statute, which provides for the probate in our courts of authenticated copies of foreign wills which have been proved according to the laws of any of the United States, or of any country out of the limits of the United States, was not designed to deny to our courts jurisdiction over the probate of the original will made in a foreign country, but disposing of property situated here. It but enlarges the jurisdiction of the court, enabling the parties to make the contest upon an authenticated copy of a foreign will, proved according to the law of the domicile, in the same manner they might have done upon the original. It could not have been intended by the legislature, in authorizing copies to be proved, to affirm that the originals, which furnished the better evidence, should not be allowed to be proved or contested. This would be to reverse the rule of law which gives the preference to the primary over secondary evidence." (Pages 288-290.)

Other authorities in point are: *Stevens, Administrator, v. Gaylord,* 11 Mass. *263; *Spraddling & Keeton v. Pipkin,* 15 Mo. 82; *Wood v. Matthews,* 73 Mo. 477; *Hyman v. Gaskins,* 5 Ired. Law [N. C.] 267; *Jaques v. Horton,* 76 Ala. 238; *Gordon's Case,* 50 N. J. Eq. 397; *Pepper's Estate,* 148 Pa. St. 5; 23 A. & E. Encycl. of L. 114 (2); 1 Woerner's Am. Law of Adm. § 226.

We have not found, nor have we been cited to, any decisions holding the contrary.

The American will shows on its face that it was executed in contemplation of, and attested in accordance with, the laws of Kansas; it disposes of property here in a form not repugnant to the laws or policy of the state, and was entitled to be probated here without being first probated at the testator's domicile.

The principal contention remaining is that the probate court of Kiowa county was without jurisdiction to appoint an administrator of the surviving partnership, inasmuch as the contract itself provided that the partnership should continue until 1911 notwithstanding the death of Herbert Marriage. The appellants' contention that the partnership was not dissolved by

the death of Herbert Marriage must be granted. Notwithstanding the general rule that the death of one partner dissolves the partnership, it is otherwise when by will or in the contract of partnership the deceased has provided that the partnership shall continue after his death. (*Insley v. Shire,* 54 Kan. 793; *Blaker v. Morse,* 60 Kan. 24; *The Exchange Bank v. Tracy,* 77 Mo. 594; 30 Cyc. 620, 653.) The real contention is that the probate court is only authorized to appoint an administrator of a surviving partnership estate where the death of one of the partners has caused a dissolution of the partnership and the surviving partner, having been cited to appear and qualify as administrator, has declined to do so; that where it is provided in the contract of partnership or by will of the deceased that the partnership shall continue notwithstanding his death the probate court has no jurisdiction over the partnership; and, further, that even though misconduct of the surviving partner might be sufficient to warrant a decree of dissolution by a court of equity the probate court could not exercise jurisdiction until such decree was rendered.

The fact that a partnership existed and the death of a partner gave the court jurisdiction to cite the survivor, and, upon his refusal to qualify, to appoint an administrator. Conceding that since it is not a court of general equity jurisdiction it has no authority to determine whether facts exist which would authorize a decree dissolving a partnership, still it had authority to determine whether the facts existed authorizing it to exercise jurisdiction and appoint an administrator, and its action can not be the subject of collateral attack. (*Brenholts v. Miller,* 80 Kan. 185; *Wyandotte County v. Investment Co.,* 80 Kan. 492.)

The contention is of slight importance, however, for reasons that will be stated. The continuing clause of the partnership agreement provided that in the event of the death of Herbert Marriage the contract should

be carried out by his executors to the same extent as
if he were living.   But his executor was not bound by
the continuing clause to stand by and permit the part-
nership property to be dissipated through the fraud
and collusion of the surviving partner.   There can be
no question but that the abuse of trust, the misappro-
priation of the funds, the disagreement between the
executor and the surviving partner and the other facts
shown by the findings were sufficient to authorize the
decree of dissolution.   The utmost good faith is re-
quired of parties to a partnership.   The court found
that the surviving partner had placed the partnership
property and business beyond his control, and that he
had acted collusively and fraudulently in dissipating
the partnership property and mingling it with property
belonging to others.   If these things had occurred in
the lifetime of Herbert Marriage a court of equity
would not have hesitated to grant him relief by appoint-
ing a receiver and winding up the business.   As the
suits were brought by the plaintiff not only as adminis-
trator of the partnership estate but also as executor
under the will, it would seem to make very little differ-
ence whether the probate court had authority to ap-
point him as administrator of the partnership estate or
not.   The petition in either event stated a cause of ac-
tion, and the findings of fact are abundantly sufficient
to warrant the judgment and decree dissolving and
winding up the partnership.   The partnership having
been dissolved, the probate court had jurisdiction over
the settlement of the partnership estate.

Although the evidence with respect to the Crebbin
land and the Herbert J. Marriage land was conflicting,
we think it was sufficient to support the findings, and
that the conclusions reached by the trial court ordering
a conveyance of this real estate were proper.

The judgment is affirmed.