*In re* Osborn's Estate.

No. 20,339.

*In re* THE ESTATE OF WILLIAM F. OSBORN, Deceased (WILLIAM F. OSBORN, jr., as Executor, etc., *Appellant;* KATIE A. OSBORN, *Appellee*).

SYLLABUS BY THE COURT.

1. WILL—*Probate Court—Jurisdiction to Set Aside Election of Widow.* Where no rights have intervened the probate court has jurisdiction to set aside the election of a widow to take under her husband's will, upon a showing that it was made under a misapprehension brought about by fraud or mistake, or by the omission of the court to make the explanation required by the statute.

2. SAME—*Election of Widow Set Aside—Evidence.* The evidence held to support findings to the effect that the election of a widow to take under her husband's will was made under such circumstances as to justify a judgment setting it aside.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed December 9, 1916. Affirmed.

*Hugh Means,* and *Raymond F. Rice,* both of Lawrence, for the appellant.

*Ralph E. Page,* and *Curtis M. Oakes,* both of Ottawa, for the appellee.

The opinion of the court was delivered by

MASON, J.: William F. Osborn died testate January 21, 1914. Six days later a record was made in the probate court reciting the election of his widow, Katie A. Osborn, to take under the will. On March 9, 1914, she filed an application to have such election set aside because made under a misapprehension of her rights under the will, brought about through her not having been sufficiently advised in that regard. The probate court denied the application, and she appealed to the district court, which found that her contentions were well founded, and that no rights had intervened, and set aside the election. The executor appeals.

1. A reversal is asked principally upon the ground that the probate court had no jurisdiction to set aside the election, and that the district court on appeal had no greater power. In support of this view it is argued that the duty of the probate

court in connection with such an election is perfunctory; that its function is completed when it has explained to the widow her rights under the will and under the law; that it acts ministerially, placing upon the record whatever the widow directs, thereby exhausting its jurisdiction; that relief from an ill-advised election can be granted only by a court of equity. This view is perhaps unavoidable, if the probate court is conceived as a mere instrument to make an entry on the record at the direction of the person interested. But we think this is not an adequate conception of the part in the matter to be performed by the probate court. The election is required (save in exceptional cases) to, be made personally in court, after an explanation of the legal effect of what is to be done. (Gen. Stat. 1909, § 9819.) The reception of the election has been held to be a judicial act which can not be performed by a deputy clerk. (*Mellinger v. Mellinger*, 73 Ohio St. 221, 227, 228.) We regard the entry of the election on the minutes as essentially the record of a decision of the court; it involves an adjudication—an investigation and a finding of the fact that such a choice has actually been made by the widow, implying that she has not only expressed herself to that effect, but has done so understandingly, after the explanations required by the statute have been made. If she should express herself as electing to take under the will and the probate judge knew that such expression was due to her misapprehension of its provisions, through not having received the explanation required by the statute, he would of course not accept or record such expression as an election. If the situation were such that a full compliance with the law on his part would have advised him that she was under such a misapprehension, but from a neglect to follow the provisions of the statute he was not informed of it, and therefore made a record showing an election at variance with her real desire, he would through inadvertence have made a finding contrary to the fact—an erroneous decision or judgment that she had elected to take under the will. A probate court is usually held to have the same power to correct its own errors as a court of general jurisdiction. (11 Cyc. 799; 1 Black on Judgments, 2d ed., § 297; Note, 90 Am. Dec. 136.) Such is the rule in this state by statute, and the probate court may set aside one of its own orders for fraud or irregularity

*In re* Osborn's Estate.

(Civ. Code, §§ 596, 605), the provision relating to the latter ground covering the results of misapprehension or inadvertence on the part of the judge  (*Bank v. Ross, Ex'x,* 90 Kan. 423, 133 Pac. 538).

In Ohio it has been held that the probate court has no power to set aside an election which it has received and recorded. (*Davis et al. v. Davis,* 11 Ohio St. 386.)    But the decision cited was explicitly put upon a narrow view of the power of that court, the opinion saying: "Its jurisdiction in probate and testamentary matters even, is special and not general." (p. 391.)    In this state, in accordance with the usual rule, the probate court is regarded as being a court of general jurisdiction with respect to matters committed to it.    (*Parnell v. Thompson,* 81 Kan. 119, 132, 105 Pac. 502.)    Our statute enumerating the powers of the probate court is quite similar to that referred to and quoted from in the Davis case, but this clause, not found in the Ohio act, was added to that of Kansas by amendment in 1868: "to have and exercise the jurisdiction and authority provided by law respecting executors and administrators, and the settlement of the estates of deceased persons."    (Gen. Stat. 1909, § 2473.)    In *Jones v. Savings Association Co.,* 10 Ohio Cir. Dec. 41, it was said of the facts in the Davis case: "Under such conditions, one might well suppose, at first blush, that the probate court had sufficiently acquired jurisdiction of the subject-matter to adjudicate upon the question of an alleged mistake as to the provisions of the will, upon part of the widow, and the effect thereof upon her rights, but the Supreme Court properly held otherwise." (p. 42.)    In *Railway v. Devine,* 15 Ohio N. P. R., n. s., 56, after citing the Davis case and others of a similar tendency, the court quoted a passage from Woerner on The American Law of Administration to the effect that the conferring of jurisdiction upon a particular subject-matter carries with it the right to decide collateral issues, and added: "Since the promulgation of the above, the tendency has been to construe even more liberally and reasonably and substantially widen the jurisdiction of the probate court to meet the exigencies arising in the administration of the duties of said court."    (p. 61.)    It then quoted from a later decision of the Ohio supreme court, and

said: "The foregoing unmistakably indicates a tendency to widen the jurisdiction of the probate court." (p. 61.)

In *Adams v. Adams,* 39 Ala. 274, 603, it was held that a widow's mistake in making her election could only be corrected in a court of general equitable jurisdiction, but the decision appears to have been affected by the fact that she had retained a benefit received under the will, and that therefore the probate court was "not clothed with the requisite power and machinery to do equity between the parties." (p. 605.) In several cases courts not having general equitable jurisdiction have been held to be authorized to give relief against an election unadvisedly made. (*Evan's Appeal from Probate,* 51 Conn. 435; *In re McFarlin,* (Del. 1910) 75 Atl. 281. See, also, *State ex rel. Minn. L. & T. Co. v. Probate Court,* 129 Minn. 442.) While the probate court has no general equitable jurisdiction, in adjudicating matters within its cognizance it may enforce the principles of equity. (*Holden v. Spier,* 65 Kan. 412, 70 Pac. 348; 27 A. & E. Encycl. of L. 553; 11 Cyc. 795.) The fact that relief from elections influenced by fraud or mistake has usually been sought in the district court is not persuasive of a want of jurisdiction in the probate court. The broader power of a court of equity make that a proper and sometimes a preferable forum for the determination of such a controversy, especially where it is or may be complicated with other matters, such as the restoration of a status that may have been changed in consequence of the election made. We conclude that the probate court had jurisdiction to set aside the election.

2. We also conclude, for reasons which will be briefly stated, that there was evidence to support the findings, conclusions and judgment of the district court. The findings that the widow was not informed as to her rights under the will and under the law, and that the probate court did not explain to her the effect of the will, were supported by evidence (some of which was contradicted) tending to show these facts: The will left to the widow during her life, or her widowhood, the homestead and another piece of real estate, the title to go to the testator's three sons upon her death or remarriage. No other specific provision was made for her. Various personal bequests were followed by a clause to the effect that all prop-

erty not otherwise disposed of should be "divided according to the laws of the state." The testator had written an addition to the will (which, however, was ineffective for want of witnesses) undertaking to give his wife a half interest in the proceeds of the sale of a tract of land, subject to some minor legacies, the other half to go to the testator's sons. This was read to her at the same time as the will, by a banker in whose custody both documents had been left, and she supposed that it was a part of the will—did not know it from the will—did not understand the nature of a codicil. The probate judge knew nothing of the additional writing, which was not offered for probate. He did not read the will to the widow. He asked her if he should do so, and she said that it had already been read to her. He did not tell her what her rights would be under the will or under the law, beyond answering some questions she asked as to the sale of the home, and there was some conflict as to just what these answers were. We regard this evidence as justifying also the conclusion of the district court that the widow did not, with a full knowledge of her rights, elect to take under the will, and that if her rights had been fully explained to her she would have discovered the mistake under which she was laboring with respect to the provisions of the so-called codicil being a part of the will.

The fact found by the court that the sons of the testator, knowing that the widow understood the codicil to be a part of the will, permitted her to make her election under that misapprehension, without informing the probate judge of its existence, was inferable from evidence of a discussion between them, after it had been read as though it were a part of the will, in which there was talk about the sale of the land to which it related, and the division of the proceeds, with an offer on the part of the sons to add to the share she was to receive, and from the fact that she was permitted to remain in the belief that the codicil was a part of the will, while the probate judge was not informed of its existence.

The trial court stated as a conclusion from the facts indicated that the sons practiced a fraud upon the widow in this respect, or if their course was due to a mistake on their part, that she should still have relief. The executor maintains that no fraud could have resulted because the residuary clause of the will, which covered the land described in the codicil, called

for its division according to law, which would have given the widow an unencumbered half, while the codicil gave her but a half interest in the proceeds, subject to the payment of legacies. Counsel for the widow, on the other hand, express the opinion that the residuary clause in the will was a mere declaration of intestacy as to the property not specifically disposed of, and that if she elected to take under the will she could derive no benefit therefrom, citing *Compton v. Akers,* 96 Kan. 229, 150 Pac. 219. We think in directing the division of the residuary estate according to law the testator merely adopted a convenient means of indicating how the property was to be divided under the will. (*Huber v. Carew,* 26 Ohio Cir. 389.) The rule that one who would receive the same interest either as devisee or heir is deemed to take in the latter capacity can hardly apply, for that is based upon the presumption of a greater advantage to the beneficiary. (2 Underhill on The Law of Wills, § 609.) But apart from the question whether the codicil was more favorable to the widow than the will, the fact that it was presented to her and withheld from the probate judge tended to some confusion, and the incident serves to strengthen the view that her election was not made with a full knowledge of the situation.

Criticism is made of a finding that an election to take under the law would have been of substantial benefit to the widow, and that she would not have elected to take under the will if she had been fully advised. The finding does not mean that the provisions of the law were necessarily to be preferred to those of the will, but that the former offered advantages not given by the latter, upon which such a preference might reasonably be based. The course of the litigation affords a sufficient indication of the desire of the widow to take under the law. The finding that she did not know, until after the election was entered on the record, of the facts regarding some real estate, the title to which was in one of the sons, was in accordance with the evidence, and does not imply that she had had no opportunity to inspect the record.

A finding that none of the beneficiaries under the will had changed his situation in view of the election is challenged on the ground that as the sons had agreed, in consideration of the widow's electing to take under the will, to make some repairs on a building of which it gave her the use (as well as

to pay her $2300 from the proceeds of the sale of the land described in the codicil), it is fair to presume that they had made the repairs mentioned, no evidence having been introduced to the contrary. Wherever the burden of proof may have technically rested in this regard, the appellant, having made no effort to show the facts, is not entitled to a reversal on the naked presumption. (*Bank v. Brecheisen*, 98 Kan. 193, 157 Pac. 259.) The agreement which was signed at the time the election was recorded, that the widow should be paid a specific amount out of the proceeds of the tract referred to in the codicil, seems to indicate that the provisions of that instrument relating to its sale were in the minds of the parties, and that the widow was not fully informed as to her rights either under the law or under the will.

The application to have the election set aside was made without any great delay; the trial court had a better opportunity than can be afforded on review of determining the state of the widow's mind at the time she indicated a desire to take under the will, the information she had received, and her understanding of the alternatives between which she was required to elect; the conclusion must be upheld that no actual election, with such opportunity for the exercise of an intelligent choice as the statute contemplates, was ever made.

The judgment is affirmed.