No. 24,438.

*In re* DISBARMENT OF EARLE R. GILBERT.

No. 24,439.

*In re* DISBARMENT OF LEE JUDY.

SYLLABUS BY THE COURT.

DISBARMENT PROCEEDINGS—*Suspension from Practice as Attorneys at Law for One Year.* In a disbarment proceeding it is held that the evidence is sufficient to warrant the suspension of the accused from practice as attorneys and counselors at law for a period of one year and until payment of the costs of the proceedings.

Original proceeding in disbarment. Opinion filed July 7, 1923. Judgment of. suspension.

*Charles B. Griffith,* attorney-general, *A. M. Keene,* of Fort Scott, and *William Easton Hutchison,* of Garden City, for the accusers.

*J. E. McFadden, David F. Carson, J. O. Emerson,* and *C. W. Trickett,* all of Kansas City, for the accused.

The opinion of the court was delivered by

JOHNSTON, C. J.: These were disbarment proceedings brought against Earle R. Gilbert and Lee Judy, who had been admitted to practice law in the courts of Kansas and have maintained law offices in Kansas City. In an appeal in *Judy & Gilbert v. Railway Co.,* 111 Kan. 46, 205 Pac. 1116, the attention of the court was drawn to their conduct and was found to be such as could not be passed over unnoticed. Accordingly the attention of the state board of law examiners was directed to the record in the case with a view of determining whether disciplinary proceedings against the attorneys should be initiated. The inquiry of that board resulted in the filing of accusations against each of them. Thereupon the honorable Z. C. Milliken was appointed to take the evidence in each case and make findings of fact and conclusions of law upon the evidence. A hearing was had and the report of the commissioner upon the accusation against Lee Judy is as follows, except that portions of evidence recited and of documents in the report have been summarized.

"The accused, Lee Judy, is a duly admitted and practicing lawyer of Kansas City, Kan., and a member of the bar of Wyandotte county and a man of middle age. Prior to November 6, 1919, he bore a good reputation in his personal and professional capacity, and his conduct was regarded as ethical, and was not reputed to be an ambulance chaser or snitch lawyer. These facts were abundantly established by many members of the bar of Kansas City, including three judges of the district court of that county. For some years he had been connected with the legal departments of Kansas City. He and one Earle R. Gilbert about the same age, are copartners in the law practice under the name of Judy & Gilbert, and were so associated for a year or more before November, 1919. In 1919 Gilbert was public administrator of Wyandotte county. On November 6, 1919, one Louis R. Holbrook, a resident of West Plains, Mo., but temporarily residing at Argentine, Kan., and an employee of the Santa Fe Railway Company, was killed at Edgerton, Johnson county, Kansas, as a result of his employer's negligence.

"Judy and Gilbert learned of the death, and on November 7, Judy and Gilbert went to the room of the deceased in Argentine and examined the personal effects of the deceased, consisting of a trunk and his wearing apparel, of an estimated value of twenty-five dollars. Judy returned and Gilbert went on to Edgerton for the purpose of procuring evidence upon which to base a suit against the railroad company. He interviewed several witnesses, but did not look up or see the body of the deceased, then at that place, and returned

to Kansas City about two o'clock the following morning. The parents of the deceased lived at West Plains, Mo., and another son was at Kansas City, Kan. The parents were notified of the death by some person whose name is not shown and they communicated with this son, and he took charge of the remains of the deceased, and the same were shipped to West Plains and buried on November 9, 1919. On November 7 this son called at the office of Judy & Gilbert, but it does not appear that he authorized or made any arrangements for any suit. On November 7, 1919, the accused wrote to the mother of the deceased the following letter: . . ."

A summary of this letter is a notice to Mrs. Holbrook that her son had been killed, that Gilbert had been appointed as administrator of his estate, that the railway company was liable for the death of her son, that Judy and his partner had investigated the case and on the next morning they would bring an action against the company, and the hope was expressed that she would not sign any statement to the company concerning her son as it might be used against the estate in the suit for damages, that they had a policy of insurance upon the life of the deceased in which she was entitled to receive $1,000 and if she would come to their office they would help her fill out the papers and make proof of death for her.

"On November 8 Gilbert went to the office of the probate court in Kansas City and filed an application to be appointed administrator of the estate of the deceased, alleging, among other things, that the deceased was a resident of that county and left a personal estate of the value of $50, and he was appointed administrator of the estate of Louis R. Holbrook, and qualified. He gave bond in the sum of $100 and it was signed by himself, Lee Judy and W. P. Gilbert, father of Earle R. Gilbert. No inventory was filed until January 22, and the inventory recited that the personal estate was of the value of $25 and consisted of his trunk and wearing apparel. Later, on March 23, 1920, the probate court released the dead man's trunk and clothing upon the payment by his father into court the sum of $50.

"On November 8 the accused wrote a petition for a cause of action against the director-general of railroads and the Santa Fe Railway Company, claiming damage on account of Holbrook's death in the sum of $25,000, and this petition was filed by the firm of Judy & Gilbert in the district court of that county on the same day. A cost bond procured by the accused and his partner was filed, and signed 'Earle R. Gilbert, administrator of the estate of Louis R. Holbrook, by Lee Judy, his attorney,' and by one J. E. Shindler. The surety qualified to be worth $50 over and above exemptions, debts and liabilities. On the same day, November 8, either before or after the commencement of this action, a contract was entered into between Earle R. Gilbert, administrator, as party of the first part, and Judy & Gilbert as party of the second part. A true copy of said contract is filed with the accusation and herein referred to and made a part of this report. This contract was presented by Judy & Gilbert to the probate judge, and he indorsed on it his approval, bearing the same

date of its execution. At the time this suit was filed Judy & Gilbert served notice on the defendants, claiming an attorney's lien in the case filed." . . .

The notice was in the ordinary form notifying the company that they had·a contract with plaintiff by which they were to receive fifty per cent of the amount recovered in the case.

"Before filing this suit accused knew that Sarah Holbrook and J. C. Holbrook were the parents and heirs at law of the deceased, and knew their residence and post-office address, but did not communicate with them concerning the commencement of any suit to recover damages, or in any wise obtain their advice or·consent to such litigation.

"On November 14, 1919, the mother of the deceased came to Kansas City to obtain a policy of insurance in her favor which had been left by the deceased, and also his trunk, and on that date she and her son called at the office of the accused and was advised of the commencement of the suit to recover damages, and Mrs. Holbrook claims that this was the first notice she had that the suit had been commenced. On this date a contract was entered into between the accused and his partner on one side and Mrs. Holbrook on the other side. A copy of said contract is attached to the accusation and is referred to and made a part of this report. Mrs. Holbrook claims that she did not know she was signing a contract of employment, but supposed it was a paper authorizing Lee Judy to recover back money from the railroad company paid by her son for the shipment of the dead body to West Plains; but your commissioner is satisfied that she knew she was making a contract, and that the same was read to her before she signed it.

"Later J. C. Holbrook, father of the deceased, was appointed administrator in Howell county, Missouri, and after his appointment made a settlement with the Santa Fe Railway Company of the damage sustained by reason of the death of his son, and he was paid $1,500. Later Judy & Gilbert commenced suit in the district court of Wyandotte county against the director-general and the Santa Fe Railway Company to recover a sum equal to fifty (50) per cent of the amount paid the father of the· deceased. This action was based on the contract made November 8, 1919, and the contract made November 14, 1919, and in that case plaintiffs obtained judgment for $750. On the trial of that case accused was a witness on his own behalf, and in cross-examination in part testified: . . ."

This testimony was to the effect that the first and only time he had seen Mrs. Holbrook was on November 14, 1919, when she came to his office, that she appeared to be afraid that the suit would cost her something, that he told her that she would have none of the costs to pay whatever, that a bond which had been given would take care of the costs and however the suit might go she would not have any of the costs to pay.

"On the hearing before the commissioner the affidavit of A. J. Herrod, the attorney for plaintiffs in that suit, was introduced, and by consent considered as his deposition. From his evidence I find that after Lee Judy had given the

*In re* Gilbert and Judy.

foregoing testimony and left the stand the accused spoke to his attorney about the testimony he had given concerning the costs, and requested that he be put back on the stand to make a more complete explanation, but his attorney advised him that his statement as to his absorbing the costs had been stricken out and was no longer in the case.

"Your commissioner finds from the evidence that on learning of the death of Holbrook the accused and his partner arranged that Gilbert should make investigation of the facts relating to the death for the purpose of instituting a suit against the railroad company for damages, and that Gilbert did not make this investigation in discharge of any official duty or by virtue of his office as public administrator. It was a clear case of stirring up unauthorized litigation for the personal profit of the accused and his partner, and primarily for their own benefit. It is not shown that there was any actual necessity for the haste displayed in instituting this suit, except that it might be done before the heirs of the deceased were advised of the situation and could make other arrangements.

"I find further that it was mutually understood between the accused and Mrs. Holbrook, on the 14th day of November, 1919, that the accused and his partner would protect her against any expense of the litigation contemplated by the contract made on that date, and that she so understood it and the accused so understood it. They were lawyers of considerable experience, and must have known and did know that all litigation is more or less uncertain, and they knew that the assets of the deceased, exclusive of the claim against the railroad company, had no intrinsic value, and the intent of the accused and his partner could not have been otherwise than to stand liable for the costs of litigation.

"I find that the conduct of the accused was unworthy and unbecoming an attorney at law and in violation of the code of professional ethics adopted by the bar association of this state, and that both contracts made for their services were unfair, champertous, illegal and void."

The findings of fact as to Gilbert were substantially the same as those found in respect to Judy, except that it was found that Gilbert was not present when the contract between the firm and Mrs. Holbrook was made, but that he knew of its execution soon after it was made and acquiesced in it. It was also found:

"That the accused, on learning of Holbrook's death, went to Edgerton for the sole purpose of discovering facts whereon to base a lawsuit for damage. He did not go there in his official capacity as public administrator, but he went there in the interest of his firm and for the purpose of instigating litigation. His act was officious and not official, and his official character as public administrator was a mere guise used to get business for his firm and for their own profit, and that he thereby prostituted his official office for private gain.

"Your commissioner further finds that in entering into a contract of employment with himself and partner he took an unfair advantage of the heirs at law of the deceased, and the haste displayed in instituting this suit was to

prevent them from making settlement of their claim or other arrangements for its recovery, and by such conduct violated his oath of office as administrator and was guilty of unfaithful and unbecoming conduct as an attorney at law, and his conduct as an attorney was unprofessional and in violation of the code of legal ethics adopted by the bar association of this state."

These cases were argued and will be considered and disposed of together. Counsel have contended that the findings are not sustained by the evidence. A careful reading of the evidence satisfies us that it amply sustains the findings of the commissioner. It is unnecessary to recount the testimony and it does not require argument, illustration or citation of authorities to show that the acts of the accused as disclosed by the findings amount to professional misconduct and violations of their duties and obligations as attorneys at law. No words can make the derelictions of the accused more clear or conclusive than those used by the commissioner. His findings are approved. The facts require punitive action and while the board of bar examiners have asked for a judgment of disbarment, we have concluded that in view of the ages of the accused, their previous good reputation as testified to by many of their neighbors and acquaintances, and the circumstances of the case, that each should be suspended from practice as attorneys and counselors at law for the period of one year and until payment of the costs of these proceedings.

It is so adjudged.

HOPKINS, J., not sitting.