# Harry P. King (plaintiff), Joseph D. Ryan and Philip Rosenthal (intervening petitioners), Appellees, v. Chicago, Burlington & Quincy Railroad Company, Appellant.

## Gen. No. 7,396.

1. AGENCY—*proof of agency as prerequisite to admission of evidence as of purported agent to charge principal.* On an inquiry as to whether attorneys through agents solicited business so as to deprive them of the right to an attorney's lien when the suit involved was settled by their client without their authority, objections to certain questions designed to establish the solicitation by agents were properly sustained where they called for conversations and acts of the alleged agents and the client out of the presence of the attorneys without preliminary proof of the agency.

2. AGENCY—*proof of authority.* The authority of an agent, when the agency is directly involved, can be established only by tracing the authority to its source by words or acts of the principal and cannot be found to exist solely in the acts or statements of the agent himself.

3. ATTORNEYS AND COUNSELORS—*insufficiency of evidence to show improper solicitation of business by attorneys.* The court will not be justified in reversing a judgment in favor of attorneys for a lien for services, which appellant sought to avoid by showing that the attorneys through two agents solicited the business in question, because of the sustaining of objections to questions asked of the alleged agents without a prior prima facie showing of the agency where, at the hearing, both attorneys were in court and neither was interrogated with reference to their dealings with such alleged agents and appellant asked for a continuance until a later date so it could get one of such alleged agents into court and, upon the later date, did not call such alleged ·agent as a witness although he was in court.

4. TRIAL—*when offer of evidence at second hearing improperly permitted.* On a second hearing as to the right of attorneys to a lien for fees on the amount for which a judgment was settled by the client without their consent, defendant should not have been permitted to make an offer of further facts which it expected to prove by the client who was not present, where defendant had ample opportunity on the first hearing when such client was present to ask him any questions it saw fit and no steps were taken to secure his presence at the second hearing and there were

present at all times witnesses who could have testified to the facts concerning alleged improper conduct by the attorneys but no attempt was made to get the real proof outside of the testimony of the client.

5. WITNESSES—*credibility*. The testimony of one who was seriously injured and employed attorneys who rendered long and faithful services and secured a large judgment in his favor, and then not only settled his case without their knowledge or consent for less than half of the judgment but stipulated that defendant should pay no attorneys' fees and testified that he did not intend to pay his attorneys, is not entitled to much credit and reputable attorneys should not be deprived of their fees as a result of his testimony that they solicited the business from him.

6. ATTORNEYS AND COUNSELORS—*items upon which lien computable*. In awarding a lien to attorneys for their fees based upon the direct settlement made by their client of a judgment secured by them in a personal injury action, the court improperly included in the basis of such fee an amount expended by defendant in behalf of plaintiff for doctor and hospital bills before the contract for services was entered into between the client and the attorneys.

Appeal by defendant from the City Court of Kewanee; the Hon. H. STERLING POMEROY, Judge, presiding. Heard in this court at the October term, 1924. Affirmed on remittitur. Opinion filed January 31, 1925. *Certiorari* denied by Supreme Court (making opinion final).

J. A. CONNELL and STURTZ & EWAN, for appellant; J. C. JAMES, of counsel.

JOSEPH D. RYAN and PHILIP ROSENTHAL, for appellees; ROSS C. HALL and EDMUND M. SINNOTT, of counsel.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Harry P. King began suit in the city court of Kewanee against appellant, Chicago, Burlington & Quincy Railroad Company, to recover for personal injuries. Appellees, Joseph D. Ryan and Philip Rosenthal, were attorneys for King, and a verdict was returned against appellant. Later the case was settled by King without the knowledge of his attor-

neys and they filed an intervening petition for an attorney's lien under the statute. There was a judgment against appellant and this appeal followed.

It is contended by appellant that appellees were not entitled to a lien for the reason that they, through their representatives, Dubin & Shadow, solicited the business from King, and in support of this contention they cite *People v. Berezniak,* 292 Ill. 305. In that case it was held that a firm of attorneys was not entitled to recover a fee for their services where it appeared that they had obtained the case by solicitation of the client through a representative, although the contract of employment was free from fraud or misrepresentation, and no infidelity to the interests of their client was imputed to them. The decision was placed upon the ground that the conduct of the attorneys was contrary to the character of the profession and incompatible with the faithful discharge of their duties as attorneys, and to allow a recovery under such circumstances was opposed to a sound public policy and to the proper and decorous administration of the law. Other cases to the same effect are: *Puls v. Chicago & N. W. Ry. Co.,* 233 Ill. App. 625; *Ingersoll v. Coal Creek Coal Co.,* 117 Tenn. 263; *Judy v. Atchison, T. & S. F. Ry. Co.,* 111 Kan. 46, 205 Pac. 1116; *In Re Gilbert,* 114 Kan. 57, 216 Pac. 1089.

The question is whether the evidence brings appellees within the rule announced in these cases. The evidence shows that on April 25, 1923, King was employed by the appellant as a switchman in Chicago. On that day he was caught between a car and a loading platform and he received serious injuries. His pelvis was broken, his bladder was ruptured, his urethra torn, and he received various spinal and other injuries. On October 13, 1923, he entered into a written contract with appellees by which he employed them as his attorneys and agreed to pay them one-

third of any amount received or realized from his claim. On November 8, 1923, appellees began suit against appellant. On November 12, 1923, appellees served written notice of their claim for attorneys' fee upon appellant. The case was tried by appellee Ryan, and lasted about two weeks. On February 16, 1924, a verdict was returned against appellant for $25,000. A motion for a new trial was made but was never argued. About two months after the verdict and while the motion for a new trial was pending, King went to the office of appellant without the knowledge or consent of his attorneys and entered into a written stipulation with appellant by the terms of which the verdict was to be set aside, the cause submitted to the court, and a finding and judgment were to be entered against appellant for $10,800, to be satisfied in open court. At the same time King executed a release to appellant which provided that appellant was not to pay any attorneys' fees. Pursuant to this agreement, appellant made a motion to dismiss the case. The motion was set for hearing by the court, whereupon the appellees filed their intervening petition for an attorney's lien. There was a hearing upon this motion on May 29, 1924. Appellees contended upon this hearing that the settlement and release executed by King were fraudulent and were a mere subterfuge to defraud them of their fee; that the court should not dismiss the suit or enter judgment for any specific amount until appellees were able to determine how much had actually been paid by appellant to King. Appellees subpœnaed King, Joseph A. Connell, who was the attorney for appellant, the comptroller and auditor of appellant, together with the books, vouchers and records of appellant. King testified on the hearing that he received $10,800 on April 28, 1924, the date his contract with appellant was signed, and that he received no other sum. The check by which he was paid was offered

in evidence, was dated April 17, 1924, and was paid on April 18, 1924. King also testified that on several occasions after the $25,000 verdict was returned, he talked with appellee Ryan, and told him that under no circumstances would he accept a settlement of less than $22,500; that without solicitation on behalf of appellant he went to its office and talked six or seven hours with Connell, and settled for $10,800; that no arrangement for the payment of attorneys' fees was made and that question was not discussed; that he did not intend to pay his attorneys for their services. Connell testified he discussed the question of attorneys' fees with King and inserted a clause in the release to the effect that appellant was in no event to be responsible therefor. The evidence shows that in addition to the $10,800, appellant also paid $2,083.50 for doctor and hospital bills. This last amount was held by the court to be included under King's contract with appellees, and a judgment for an attorney's lien was rendered against appellant for one-third of $12,883.50, or for $4,294.50.

While King was upon the witness stand, appellant sought to interrogate him with reference to the circumstances under which appellees were employed as his attorneys. He was asked how he happened to go to the office of appellees in the first instance. If he was paid to employ appellees. If Louis Shadow did not see him in Mercy Hospital in June or July, 1923, and did not talk with him about employing appellees. If Shadow did not later call at King's home and suggest that he employ appellees. If Shadow later went to King's home with Dubin, and Dubin told King he was an investigator for appellees. If Dubin did not frequently call to see King in September and October at his home with reference to the employment. If on October 20, at the suggestion of Shadow and Dubin, King did not go to appellees' office. If it was not true that shortly after that talk

with appellees at their office, Shadow and Dubin called upon King at his home and urged him to employ appellees, and during this conversation Dubin offered to pay King $100 if he would employ appellees. If in the latter part of October, King did not call at the office of appellees, after Dubin's offer to pay $100 had been made, and King then signed a contract with appellees, and after the contract was signed Dubin paid King $100. If Dubin did not tell King that he would pay King $50 for every damage case King obtained for appellees. If Shadow did not tell King that he had secured a number of cases for appellees, showed King a list of them, and said he had been paid money for them by Dubin. If King did not see Shadow in the office of appellees a number of times and Shadow on each occasion discussed various cases, and Dubin said he was soliciting cases for appellees. If Dubin did not ask King on various occasions to see injured people in hospitals and other places and help obtain the cases for appellees. If Shadow and Dubin did not take various injured persons to King's house and King urged these persons to employ appellees. If Dubin did not pay King $10 at various times for services in helping secure cases for appellees.

Each of the above statements was in the form of a specific question to which an objection was sustained. This is the evidence upon which appellant seeks to base its defense that appellees solicited this business and for that reason were not entitled to an attorney's lien. It is insisted that the court was in error in sustaining the objection to each of these specific questions.

In passing upon the competency of the major portions of these questions it is sufficient to say that the court properly sustained the objections for the reason that the questions called for conversations and acts of Shadow, Dubin and King which were out of the presence of the appellees, there being no proof

that the two former were agents of the appellees. Before the acts, declarations or representations of an alleged agent are admissible in evidence against the principal there must first be a prima facie showing as to the authority of the agent. The authority of the agent, where the agency is directly involved, can only be established by tracing the authority to its source by words or acts· of the alleged principal. It cannot be found to exist only in the acts or statements of the agent himself. Meachem on Agency, secs. 100, 716; *Whiteside v. Margarel,* 51 Ill. 507; *Proctor v. Tows,* 115 Ill. 138; *Ransom v. Duckett,* 48 Ill. App. 659; *Peter Schoenhofen Brewing Co. v. Wengler,* 57 Ill. App. 184. Even though previous similar acts of the agent, done with the knowledge and approval of the principal, are shown, a recovery cannot be sustained if such evidence was alone relied upon. It would be further necessary to show that the person dealing with the agent had knowledge at the time of such dealing of such previous acts, and relied upon them. *Rawson v. Curtiss,* 19 Ill. 456; *Maxey v. Heckethorn,* 44 Ill. 437. An agent cannot confer power upon himself and therefore his agency or authority cannot be established by showing either what he said or did. *Mullanphy Sav. Bank v. Schott,* 135 Ill. 655; *El Reno Wholesale Grocery Co. v. Stocking,* 215 Ill. App. 399; *Boyd v. Jennings,* 46 Ill. App. 290. There may have been a few of the questions to which objection might properly have been overruled. These questions, however, were merely preliminary and none of them was sufficient to lay the foundation for a proof of agency. We are also asked to assume that the answers would have sustained the contention of appellant. We would not be justified in reversing this judgment because of any error in sustaining an objection to any of these questions.

There is another fact which has its bearing upon

this feature of the case. At the time of this hearing both of appellees were in court but neither of them was interrogated with reference to their dealings with Shadow and Dubin, neither of whom was in court. Appellant asked to have the case continued until a later date so it could get Dubin in court. The court granted the request and continued the case. At the next hearing Dubin was in court but he was not called as a witness although the attention of the court and counsel for appellant was called to the fact that he was present. As counsel for appellant asked to have the case continued in order to secure Dubin, it is difficult to understand why he did not put Dubin upon the stand if he expected to establish the charge which he was making against appellees.

On the second hearing King was not in court and appellant made an offer of further facts which it expected to prove by King. Appellant had ample opportunity on the first hearing when King was in court to ask him any questions it saw fit to ask, and appellant should not have been permitted on the second trial, when King was not present, to make offers to prove certain other facts. If appellant desired to prove these additional facts it should have taken steps to secure the attendance of King. There were witnesses present at all times who could have testified to the facts concerning this alleged improper conduct by appellees but no attempt was made to get the real proof outside of the testimony of King.

There is another feature which is worthy of consideration. King was the only witness called to establish these charges. Even conceding that he would have answered all questions put to him so as to tend to establish that appellees solicited this business contrary to the rule laid down by the Supreme Court, it is a serious question whether a court would be justified in depriving appellees of their attorneys' fees under such evidence. It appears from this whole

record that King is a man unworthy of belief and that he has been guilty of conduct which does not recommend him to the serious consideration of any court. The evidence shows that he was seriously injured. He employed appellees as his attorneys. They performed long and faithful services for him and as a result secured a large verdict in his favor. Without their knowledge or consent he entered into a secret agreement with appellant by which he settled his case for less than one-half the amount of the verdict secured. He had a right to settle his case if he saw fit but after entering into a contract with appellees he was in duty bound to act honestly and fairly with them. He not only settled his case without their knowledge and consent but he entered into a stipulation that the appellant should pay no attorneys' fees. He testified he did not intend to pay his attorneys. We are not inclined to give very much weight or credit to the testimony of such a witness and do not believe that reputable attorneys should be deprived of their fees as a result of such testimony.

In awarding appellees the amount of their fees, the court not only took into consideration the $10,800 obtained by King on settlement but also took into consideration $2,083.50 paid as doctor bills and hospital bills, part if not all of which was paid by appellant before appellees entered into their contract with King. We think in this respect the court was in error and that the only amount for which the lien should have been allowed was one-third of $10,800. If appellees see fit within sixty days of the filing of the opinion in this case to remit the difference between the amount of their lien allowed and one-third of $10,800, this judgment will be affirmed, otherwise the judgment will be reversed and the cause remanded.

*Affirmed on remittitur.*