No. 26,397.

HUGH NESTLERODE et al., *Appellees*, v. THE COMMERCIAL NATIONAL
BANK et al. (N. J. WOLLARD, as Administrator of the Estate of
ETHAN ZANE, Deceased, *Appellant*).

SYLLABUS BY THE COURT.

1. GIFTS—*Gifts Causa Mortis—Certificate of Bank Deposit—Evidence.* The
proceedings considered, and *held,* a gift *causa mortis* of a certificate of de-
posit in a bank was established by the evidence.

2. SAME—*Gifts Causa Mortis—Pleading—Evidence—Special Findings.* Assign-
ments of error relating to pleading, evidence, and special findings of the
jury, considered, and held to be without substantial merit.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER,
judge. Opinion filed July 10, 1926. Affirmed.

*E. E. Martin,* of Kansas City, for the appellant.
*C. D. Sharp,* of Kansas City, for the appellees.

The opinion of the court was delivered by

BURCH, J.: Nestlerode and Rebstock sued the bank on a cer-
tificate of deposit which they claimed they received as a gift from
Ethan Zane in his lifetime. The public administrator intervened,
and claimed the certificate as part of the assets of Zane's estate.
The bank did not contest liability to the true owner. Plaintiffs re-
covered, and the administrator appeals.

Ethan Zane died on March 26, 1924, at the age of seventy-eight
years. He lived alone in a crude habitation at the rear of a small
dwelling house on a lot in Kansas City which he owned. Alonzo
Zane, a brother, lived alone in the dwelling house until his death,

Gifts, 28 C. J. pp. 688 n. 5, 698 n. 19, 704 n. 17; 12 R. C. L. 966.

which occurred in December, 1923. Ethan Zane's health failed, and neighbors and relatives took care of his room, cooked things for him, took him about, and looked after him generally. On December 3, 1923, he was removed to the home of a married niece, Mrs. Harmon. His condition grew worse, and on March 6 he was taken back to his shanty, where he was nursed and cared for by his cousin, Ida Conley, until he died. Mr. and Mrs. Nestlerode and Mr. and Mrs. Rebstock were among those who were helpful and kind to him. On the afternoon of March 22, 1924, he indicated that he wanted to see Nestlerode and Rebstock. They were sent for, and came to his bedside. He said he did not think he would be there much longer, and he wanted to attend to a little business. He had previously delivered to Nestlerode a certificate of deposit for $1,500, for collection of interest on the certificate. Nestlerode took the interest money, $11.25, from his pocket, gave it to Zane, and Zane put the money in his vest pocket. Nestlerode then handed the certificate to Zane, saying, "Here is the certificate." Zane said, "No, you keep that and when I am gone you pay my funeral expenses, and what is left is yours, and yours," and placed one hand on Nestlerode and the other on Rebstock. An interval of silence followed. After lapse of a little time, Nestlerode put the certificate in his pocket, and Zane then said: "That is all; you can go"; and to Rebstock, "You can go on back to work, that is all I wanted." There were several witnesses to this occurrence. Two days later Zane told a cousin who was visiting him he thought he was going to die, and had left money with Mr. Nestlerode and Mr. Rebstock to defray all his expenses. Two days later he died. After the funeral, Nestlerode presented the certificate to the bank. The bank paid the funeral expenses, and issued a new certificate in the name of Ethan Zane for the balance, $1,144, the certificate in controversy.

Plaintiffs simply pleaded a gift. No motion was made to make the petition more definite and certain. At the trial, the administrator moved that plaintiffs be required to elect whether they claimed a gift *inter vivos* or a gift *causa mortis*. Under the circumstances, plaintiffs were entitled to go to the jury on the evidence, under instructions covering both classes of gifts, and the motion was properly denied.

Nestlerode testified concerning friendly relations with Zane and gratuitous services rendered him during a long period antedating

the occurrence of March 22. The testimony was objected to as relating to transactions with the deceased. Some of it was stricken out. The general relations of the Nestlerodes to Zane were otherwise proved by competent witnesses, there is no doubt about what they were, and there was specific testimony that Zane intended to recompense Nestlerode and Rebstock for their kindness to him.

In 1915 Zane married a woman, who had not lived with him for several years previous to his death, and who sued him for divorce in Oklahoma. Evidence on behalf of plaintiffs indicated Zane's conduct in giving his money to his friends and relatives might be quite reasonable from his standpoint. The administrator produced the woman, Emma W. Zane, as a witness, and complaint is made of her cross-examination, which may be summarized as follows: Zane left his wife, came to Kansas City, and stayed away and stayed away, and she sued for divorce to get him to come home. The action was settled out of court, and did not come to trial. There was no property settlement; he did not give her $50 and a deed to a farm; and she and Zane had no trouble about her children by a former husband. Other complaints respecting admission of evidence need not be considered.

The administrator demurred to plaintiff's evidence on the ground no gift, either *inter vivos* or *causa mortis,* was proved. What constitutes a gift, whether of one kind or the other, is a matter of law for the court. Whether there is any evidence of gift is also a matter of law for the court. But whether a gift has been established is a matter for the jury to determine whenever different inferences may be derived from the evidence. In this instance, immediate apprehension of death, and delivery and acceptance, were fully proved. The provision for payment of funeral expenses did not affect validity of the gift, if there was a gift. Zane died of the existing illness four days after the transaction relied on as constituting a gift, which was not revoked. It was not necessary that the certificate of deposit should be indorsed by Zane to effectuate the gift, and there was a consummated gift if Zane manifested a clear intention to make a present gift.

No fixed form of statement was necessary to express gift, the witnesses did not use precisely the same words in relating what Zane said, and the jury were obliged to determine the substance of Zane's verbal expression, to arrive at his intention. All the witnesses

agreed that when Nestlerode handed the certificate to Zane, Zane said, "You keep that," or "Keep it." One witness testified he also said, "I do not want that." No witness testified he used words importing, keep that "for me." All the witnesses agreed that, after making provision for payment of his funeral expenses, he used the present and not the future tense in stating what became of the remainder—"the rest is yours," or "what is left is yours." Zane's intention was not to be inferred, however, solely from the words which the witnesses attributed to him, but from his conduct as a whole, considered in the light of numerous facts and circumstances which tended to characterize what he desired to accomplish. It is not necessary to review the evidence here. It clearly warranted the inference of perfected gift *causa mortis*, and the demurrer to the evidence was properly overruled.

The court stated the law applicable to the case in instructions to the jury, which are not criticized. With a general verdict for plaintiffs for $1,144, the jury returned the following special findings:

"1. Did Ethan Zane permit the plaintiff, Nestlerode, to retain possession of the $1,500 certificate of deposit on or about the 22d day of March, 1924? A. Yes.

"2. If you answer the above question in the affirmative, did Ethan Zane indorse said certificate of deposit? A. No.

"3. If you answer the above question in the negative, then state whether he was physically able at said time to write his name upon said certificate. A. Yes.

"4. Did Zane fail to indorse said certificate for the reason that he intended that the right of possession of the funds in the bank should not pass to the plaintiffs until after his death? A. No.

"5. If from a preponderance of the evidence you find that Ethan Zane attempted to make a gift of the $1,500 in the Commercial National Bank to the plaintiffs, then state yes.

"(a) Was Ethan Zane, at the time said gift was made, in the immediate apprehension of death? A. Yes.

"(b) Was there a condition attached to said gift that if Zane should not die as expected that said gift should be void? A. No.

"(c) Was there a condition that if Nestlerode or Rebstock or both of them should die first, said gift should be void? A. No.

"(d) Was there a condition that Ethan Zane could revoke said gift in his lifetime? A. Yes.

"6. Did Zane know or believe that it was necessary to indorse said certificate in order to place plaintiffs in possession of the money in the Commercial National Bank in his lifetime? A. Yes.

"7. Did Ethan Zane intend that plantiffs should take said money and have

possession and control of the money in question in his lifetime, or was he attempting to dispose of said money after his death? A. Yes—before death."

The administrator moved to set aside findings 5 and 7, on the ground they were without support in the evidence. The apprehension which attends a gift *causa mortis* is not apprehension of immediate death, but immediate apprehension by the donor of his death. There was no evidence that Zane was *in extremis*, or considered disposition of the certificate would be his last conscious act. Apprehension of death was, however, immediate to his mind, and led him to provide for his funeral expenses and to dispose of the certificate. The questions propounded in subdivisions (b) and (c) of finding 5, were answered according to the fact. Zane attached no condition that the gift should be void if he did not die as expected, or if he outlived the donees. The question propounded in subdivision (d) was answered according to the law stated in the instructions. · The court told the jury in effect that a gift *causa mortis* is subject to recall in case the donor does not die. The objection to the seventh finding was met in discussing the demurrer to plaintiffs' evidence.

The administrator contends the findings relating to indorsement of the certificate, and particularly the sixth finding, conclusively show Zane had no present intention to relinquish title to the funds represented by the certificate. The argument made in support of the contention tends to defeat itself. Nestlerode and Rebstock were to get the money on the certificate, were to pay Zane's funeral expenses, and were to keep the remainder, without Zane's indorsement on the certificate. The jury were not asked to state why Zane did not indorse the certificate. Had that question been propounded, the evidence would have furnished a satisfactory answer. He did not think of it. Although Zane was familiar with certificates of deposit and other negotiable instruments payable to order, and knew such instruments required indorsement to effectuate transfer in due course, the subject did not engross him at the time he gave this certificate to Nestlerode and Rebstock. Nothing was said about indorsement, and the formality did not occur to Zane or anyone else who was present. Many men, including lawyers, some of them occupying judicial positions, can remember having checks and drafts, presented for payment or deposit, pushed back to them by the receiving teller for indorsement.

The judgment of the district court is affirmed.