No. 30,407.

T. C. EDINGTON, CHARLES R. EDINGTON, C. S. EDINGTON and MARY JENKINSON, *Appellants*, v. MINNIE G. STINE and FRANK STINE, Executor of the Purported Will of Rose Edington, Deceased, *Appellees.*

(10 P. 2d 27.)

Opinion filed April 9, 1932.

*John A. Hall,* of Pleasanton, for the appellants.

*A. M. Kent,* of Pleasanton, and *Harry Warren,* of Fort Scott, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action involved the validity of a will of the late Rose Edington which was admitted to probate in Linn county. There was an appeal from the order admitting it to probate, and an action was begun to contest the will. In the district court the appeal and the contest were tried and decided together.

The pertinent facts, in brief, were these: Rose Edington, a single woman, died testate at the home of her sister, Minnie G. Stine, in Linn county, at the age of 66. She had formerly lived with her parents in Washington county. On the death of her mother she and her father removed to Marysville, in Marshall county. For many years she followed the business of a traveling solicitor for newspapers, and often conducted piano contests to stimulate subscriptions to the newspapers she represented. These activities as well as her regular occupation deprived her in large measure of enjoying the privileges of a home, but at such limited intervals as her affairs permitted she made her home with a sister, Dr. Jennie Eddy, of Marysville. This sister died in 1926, after which Miss Edington occasionally resided with another sister, Mrs. Jenkinson, of Troy; but the testatrix continued to regard herself as a legal resident of Marysville.

In June, 1926, Miss Edington fell ill, and went to a hospital in Ohio, where she remained two years. In August, 1928, while still in the hospital, she made a will devising her property in fairly equal

parts to her three brothers, her only surviving sister, and to a deceased sister's daughter. Her property principally consisted of a farm in Oklahoma, about $3,400 in Liberty bonds in her safety-deposit box in Marysville and some money in a Marysville bank. In that will she described herself as: "I, Rose Edington, temporarily in the city of Kenton, county of Hardin, state of Ohio, but resident of Marysville, Kansas, do hereby make [this will, etc.]" That will named her brother, Charles R. Edington, of Marshall county, as executor. In September, 1928, Charles R. Edington went to Ohio and brought the testatrix to the home of defendant, the only sister she had left. This arrangement was made, partly at least, because it was not convenient to bring her to Marysville, and because there was no one of the family thereabout so situated as to be able to care for her. Ere that time, Mrs. Jenkinson, of Troy, with whom she sometimes stayed when not traveling in pursuit of her business, had died. The sole remaining sister, Mrs. Stine, of Linn county, undertook to board and care for the testatrix for a stipulated weekly sum agreed upon between herself and her brother Charles.

One of the sharply disputed questions in the trial below was the mental condition of Miss Edington during the year she abode with defendant in Linn county and particularly at and about the time the will in controversy was made, which was dated on August 7, 1929, some six weeks prior to her death. This last will began thus: "I, Rose Edington, of Pleasanton, Linn county, Kansas, do hereby make, publish and declare this my last will, etc." It devised all the property of the testatrix to her sister, Mrs. Stine, and named Frank Stine, husband of the sole beneficiary, as executor.

Following Miss Edington's death, her brother Charles, on September 24, 1929, filed the Ohio will for probate in Marshall county and it was admitted to probate on October 7, 1929. The later Linn county will was filed for probate in Linn county on September 25, 1929, and admitted to probate on October 10, 1929. On October 14, 1929, Charles R. Edington, appointed executor by the Marshall county probate court, with the other appellants herein, appealed from the order admitting the Linn county will to probate. About the same time the same appellants brought this action in the district court of Linn county to contest the will of August 7, 1929, in which all the property of the testatrix was devised to her sister, Mrs. Stine. These causes were heard together, at the conclusion of which the trial court made findings of fact as follows:

"And the court . . . finds that this is an action to contest a will and an appeal from the order of the probate court of Linn county, Kansas, admitting to probate the will of Rose Edington, deceased.

"The court finds that the first question that arises in the above matter, is the residence of the deceased, Rose Edington; and, relative thereto, the court finds and concludes that it is established clearly and conclusively, by the evidence, that Rose Edington was a resident of Linn county, Kansas, at the time of her death.

"The court further finds that the will executed by Rose Edington on or about the 7th of August, 1929, is the last will and testament of the said Rose Edington, deceased; that said last will and testament of Rose Edington was duly admitted to probate in the probate court of Linn county, Kansas, on or about October 10, 1929; and that the order and judgment of the probate court of Linn county, Kansas, admitting said will to probate should be affirmed.

"The court further finds that the purported will of Rose Edington, deceased, purported to have been admitted to probate in Marshall county, Kansas, on or about October 7, 1929, was not the last will and testament of Rose Edington, deceased; and that the probate court of Marshall county, Kansas, did not have jurisdiction of the estate of Rose Edington, deceased, for the reason that at the time of the death of said Rose Edington, she was a resident of Linn county, Kansas."

Judgment was accordingly entered for defendant, and the beneficiaries under the Marshall county will appeal, presenting for our review four main points of dispute, viz.:

"1. Whether the so-called Marshall county will shall prevail or whether the so-called Linn county will shall prevail. The one-year bar of the statute and the jurisdictional question of residence are involved.

"2. Whether Rose Edington, the testatrix, was a resident of Marshall county or Linn county at the time she died.

"3. Whether the Linn county will should be set aside under the requirement of R. S. 22-214, requiring that where confidential relations exist the will shall not be held to be valid unless it be affirmatively shown that the testator had independent advice.

"4. Whether Rose Edington was mentally competent to make a will and as to undue influence."

Touching these in order, appellants first contend that the Ohio will of 1928 was offered for probate and probated in Marshall county a day ahead of the Linn county will, and since no appeal was taken from the probate of the will in Marshall county, and no proceedings instituted to contest it as permitted by statute (R. S. 1931 Supp. 22-222, 22-223), that will must be recognized as valid and binding on all concerned. The case of *Rishel v. McPherson County,* 122 Kan. 741, 253 Pac. 586, is cited. In that case it was said:

"The statute provides for establishing a will by a proceeding *in rem (Pee v. Carlyle,* 120 Kan. 200, 202, 243 Pac. 296), which concludes the world with

respect to validity of the will, unless some person claiming an interest appears within two years and contests it by civil action in the district court. The time limitation is now one year. (Laws 1925, ch. 160.)" (p. 751.)

Obviously, however, the significance to be attached to the probate of the Ohio will in Marshall county depends upon whether the testatrix was a resident of Marshall county when she died. The pertinent statute, in part, reads:

"That upon the decease of any inhabitant of this state, letters testamentary or letters of administration on his estate shall be granted by the probate court of the county in which the deceased was an inhabitant or resident at the time of his death. . . ." (R. S. 22-301.)

In *Perry v. St. J. & W. Rld. Co.*, 29 Kan. 420, the validity of an order of the probate court of Doniphan county issuing letters of administration for the estate of a woman killed by the defendant railroad was under review. This court said:

"As the deceased was not an inhabitant or resident of Doniphan county at the time of her death, . . . the probate court of Doniphan county had no jurisdiction to issue letters of administration on her estate, or to appoint the plaintiff the administrator." (p. 422.)

In *Ewing v. Mallison*, 65 Kan. 484, 70 Pac. 369, the validity of letters of administration by the probate court of Wyandotte county for the estate of a man who in his lifetime had been a resident of Lyon county was called in question. An administrator had also been appointed by the probate court of Lyon county, and he filed a plea in abatement in the probate court of Wyandotte county. This plea was overruled, and upon a hearing it was found that the deceased was a resident of Wyandotte county at the date of his death. No appeal was taken from the proceedings in either probate court. Later an action was begun by the Wyandotte county administrator to recover certain certificates of deposit in an Emporia bank, and the Lyon county administrator was impleaded. He set up his appointment as administrator in Lyon county and his right to the certificates. The Wyandotte county administrator replied, pleading the adjudication in the probate court of Wyandotte county and the consequent estoppel of the Lyon county administrator to claim the certificates. The lower court ruled in favor of plaintiff, but the judgment was reversed by this court, where it was held:

"The probate court of a county has no jurisdiction over the estate of a deceased resident of this state to appoint an executor or administrator, or to prove a will, unless the deceased was at the time of his death an inhabitant or resident of the county of such probate court.

"The place of residence of the deceased at the time of his death is an essential, collateral, jurisdictional question of fact. This fact is not conclusively established by the appointment of an administrator, the issuance of letters of administration, the probating of a will, or by any other decision in reference to the estate of the deceased which a probate court may make; and, in a proper collateral action or proceeding, the true place of residence of the deceased at the time of his death may be shown for the purpose of disproving jurisdiction in the court assuming to administer the estate.

"A party is not estopped or concluded by the decision of a court proceeding without jurisdiction of the subject matter, but may show the want of jurisdiction in the court in order to show that he is not concluded by its decision." (Syl. ¶¶ 2, 3, 5.)

Again in *Dresser v. Bank*, 101 Kan. 401, 168 Pac. 672, it was said:

"A probate court is without authority to appoint an administrator of the estate of a deceased person unless the deceased was a resident of the county of the court at the time of his death, and a decision of a probate court that the deceased was a resident of the county of the court at the time of his death is open to collateral inquiry for the purpose of showing a lack of jurisdiction to make the appointment." (Syl.)

See, also, *Connell v. Moore*, 70 Kan. 88, 78 Pac. 164.

The next point urged by appellant deals with the question whether the testatrix was a resident of Marshall or Linn county at the time she died. Appellants say they *"think* that the *undisputed* evidence shows that Rose Edington was in fact a resident of Marshall county when she died." That puts the matter altogether too broadly. Her residence in Marshall county had long been constructive rather than actual. During her active years her work largely deprived her of an actual residence anywhere, although of course she had a right to choose Marshall county as her place of residence, and so long as she so regarded it the courts and everybody concerned would have to respect her attitude on the subject. But she never did settle down as a resident of Marshall county, never paid taxes there, never voted there, and had not actually been in Marysville since shortly after the death of her sister, Doctor Eddy, in 1926. It was proper for the court to take into consideration the fact that her sister's death in Marysville deprived her of the practical facilities of a place of residence, also the lengthening years and growing infirmities of the testatrix, and the fact that on her return to Kansas there was no practicable way she could take up her abode in Marshall county. In March, 1929, Charles R. Edington, who had gone to Ohio and brought the testatrix to the home of defendant in Linn county, wrote: "I sure had a white elephant when I found her in Ohio."

Her growing infirmities, and her constant need of a sister's care, apparently led her to abandon all idea of a residence in Marshall county and induced her to make her permanent residence in Linn county. And so, in the spring of 1929, when the township assessor called in Linn county on her, she listed her personal property with him and stated that she was a resident of Linn county. If the will made in Linn county is otherwise valid, its recital that the testatrix was a resident of Linn county is also entitled to some evidential significance. Under all the evidence it seems imperative to hold that the question of the place of residence of the testatrix was merely the familiar one of disputed fact, and that the evidence and inferences to which the trial court gave credence are so potent that the finding that the place of Miss Edington's residence at the time of her death was in Linn county will have to stand.

The next point urged by appellants is that the Linn county will was invalid because it was written and prepared by Minnie Stine, sole beneficiary and confidential agent of the testatrix, and that the evidence shows that the testatrix had no independent advice. Our perusal of the record suggests no such objections to the will. In the first place Minnie Stine neither wrote nor prepared the will. It was written by A. M. Kent, a lawyer of Pleasanton, and witnessed by Kent and by Frank B. Ellis, a Pleasanton banker. Both these men testified as to the circumstances under which the will was prepared and approved by the testatrix. Lawyer Kent testified that he had been apprised by Frank Stine, husband of Minnie, of the way Miss Edington wanted her property disposed of. The will was prepared accordingly and read to her. Kent testified:

"I said, 'Miss Edington, is that the way you want it?' and she said: 'That is just the way I want it. I want to give all my property to my sister, Mrs. Stine.' I asked her who she wanted to witness the will, and she said she wanted us two [Kent and Ellis] to witness the will. She requested Frank Ellis to take the will and put it in the bank."

It therefore appears that the circumstances were entirely wanting here for the application of the provision of R. S. 22-214, which requires that where it appears that the will is written or prepared by the sole or principal beneficiary it must be shown affirmatively that the testator knew its contents and had independent advice with reference thereto. In *Ginter v. Ginter*, 79 Kan. 721, 101 Pac. 634, it was said:

"The mere existence of confidential relations between a testator and a

beneficiary under his will does not raise a presumption that the beneficiary has exercised undue influence over the testator and does not cast upon the beneficiary the burden of disproving undue influence. Those consequences follow only when the beneficiary has been actively concerned in some way with the preparation or execution of the will." (Syl. ¶ 8.)

See, also, *Carmen v. Knight,* 85 Kan. 18, 116 Pac. 231; *Higbee v. Bloom,* 108 Kan. 723, 730, 731, 196 Pac. 1080; *Maddy v. Hock,* 134 Kan. 15, 20, 3 P. 2d 408.

Among the cases cited by appellants is the recent one of *Johnson v. Donley,* 133 Kan. 73, 299 Pac. 270, where the fact that the witnesses to the will were selected by the scrivener and not by the testator was given some evidential significance along with the other evidence to justify the trial court's findings and judgment. But here the evidence was clear and not contradicted that the testatrix herself selected the witnesses.

On the fourth and last point urged by appellants they contend that the evidence shows that Rose Edington was not mentally competent to make a will on August 7, 1929, and that it must have been brought about by undue influence. It is the law that undue influence cannot be presumed but must be established. There is nothing in this record to justify a finding of undue influence. As to the testamentary capacity of Miss Edington, it was shown that her affliction was *paralysis agitans,* or shaking palsy. Expert medical testimony was adduced that this disease does not affect the mind, although the drugs given to alleviate it sometimes may cause the mind to wander temporarily. There was abundant testimony, both professional and nonprofessional, to the effect that notwithstanding Miss Edington's physical infirmities at and about the time the will was executed by her, "her mental condition was alert," that "she knew what she was doing" and that "she talked just as sensibly as anybody." It is needless to set out the evidence at greater length; this court has read it with painstaking care, and we are bound to hold that the trial court's finding of fact on the question of Miss Edington's testamentary capacity cannot be disturbed without violating the cardinal rules which govern appellate review.

The judgment is affirmed.