No. 36,076

In the Matter of the Estate of William R. Summerfield, Deceased. (BERTHA SUMMERFIELD, and JOHN F. NOVAK as Administrator of the Estate of William R. Summerfield, Deceased, *Appellants*, v. C. CLYDE MYERS, Public Administrator of Wyandotte County, *Appellee*.)

(147 P. 2d 759)

Opinion filed April 8, 1944.

*George D. Miner* and *Paul L. Aylward*, both of Ellsworth, were on the briefs for the appellants.

*Louis R. Gates*, of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was a proceeding to determine the venue for the administration upon the estate of William R. Summerfield deceased, late of Ellsworth county. The trial court held the venue was in Wyandotte county. The mother and sole heir of decedent and his administrator appointed in Ellsworth county have appealed.

The facts were stipulated in writing. The pertinent ones are not numerous and may be stated as follows: William R. Summerfield died on February 2, 1943, at a hospital in Kansas City, where he had been a patient eleven days. For seven years prior thereto he had been the agent of the Union Pacific Railroad Company at Black Wolf in Ellsworth county, where he maintained a home. His wife's death had preceded his. They had no children. His mother, Bertha Summerfield, was living at Manning, Iowa, and was his sole heir at law. On the next day an undertaker advised C. Clyde Myers, who was the public administrator in Wyandotte county, of the death of

Mr. Summerfield. Mr. Myers investigated and found that the deceased had with him at the time of his death $39.32 cash, a watch, some personal effects and papers, including a bank book of the Black Wolf State Bank showing a balance to his credit of $5,341.11. Mr. Myers called the bank by telephone and learned William R. Summerfield had no heirs in Kansas, and the address of his mother. He then called Mrs. Bertha Summerfield and advised her of the death of her son and stated that he was proceeding to look after everything and handle the estate, and on the same day, February 3, 1943, he filed in the probate court of Wyandotte county a petition asking that he be appointed temporary administrator, which order was made.

Thereafter and on February 10, 1943, Mr. Myers filed in the probate court of Wyandotte county a petition to be appointed administrator of the estate of William R. Summerfield, in which petition he alleged, among other things:

"That your petitioner does not know the place of residence of such deceased at the time of his death, but that he died at and in Wyandotte county. . . ."

Thereupon the court made an order fixing March 8, 1943, as the date for the hearing of the petition. The date of the hearing was continued from time to time to April 22, 1943.

In the meantime and on February 10, 1943, Albert Summerfield, brother of the deceased, filed in the probate court of Ellsworth county a petition for the appointment of an administrator for the estate of William R. Summerfield alleging, among other things, that the deceased was a resident of Ellsworth county at the time of his death; that he died intestate, leaving an estate to be administered and leaving as his only heir at law his mother, Bertha Summerfield. She signed a waiver of notice of the hearing of the petition, which was in fact heard by the court on February 16, 1943. The probate court of Ellsworth county found that William R. Summerfield was a resident of Ellsworth county at the time of his death; that he died intestate leaving an estate to be administered, and appointed John F. Novak as administrator of such estate and fixed his bond at $15,000. Mr. Novak duly qualified as such administrator and letters of administration were issued to him. Bertha Summerfield and John F. Novak each filed in the probate court of Wyandotte county their written defenses to the petition of C. Clyde Myers to be appointed administrator of the estate, in which they alleged that William R. Summerfield was a resident of Ellsworth county at the time of his death; that he died intestate; that his mother, Bertha Summerfield,

of Manning, Iowa, was his only heir at law; that he had an estate to be administered; and further alleged the proceedings in the probate court of Ellsworth county by which Novak was appointed administrator; attached to their defenses copies of petition, waiver of notice and order of the court making the appointment; alleged there had been no appeal therefrom, and that it was final and conclusive. They asked the probate court of Wyandotte county to find that it had no venue over the administration of such estate, and that the venue had been finally adjudicated by a court of competent jurisdiction to be in Ellsworth county.

The hearing in the probate court of Wyandotte county on April 22, 1943, was upon the written stipulation of the parties, which embodied the above facts much more in detail than is here stated. Among other things it contained the following:

". . . and for the purpose of determining the venue it is stipulated that Mr. William R. Summerfield, at the time of his death, was a resident of Black Wolf, Ellsworth county, Kansas."

The probate court held that the venue for the administration of the estate of the decedent was in Wyandotte county. Mrs. Summerfield and Mr. Novak appealed to the district court, where the matter was heard upon the pleadings and stipulation previously filed. The district court made findings which embodied the facts stipulated and found that the venue for the administration of the estate of the decedent was in Wyandotte county. The appeal is from that judgment. We take note of the fact that the procedure in this case followed that portion of G. S. 1943 Supp. 59-2203 which reads:

"If proceedings are instituted in more than one county, they shall be stayed except in the county where first commenced until final determination of venue. If the proper venue is determined to be in another county, the court, after making and retaining a true copy of the entire file, shall transmit the original to the proper county."

Prior to the adoption of the new probate code it was difficult to get the question of venue in any one court where there could be a final determination. (See *Ewing v. Mallison,* 65 Kan. 484, 70 Pac. 369, and cases cited therein; *Dresser v. Bank,* 101 Kan. 401, 168 Pac. 672; *Edington v. Stine,* 135 Kan. 173, 10 P. 2d 27.) We take note also of the fact that the new code clarifies the distinction between venue and jurisdiction. Jurisdiction is the power of the court to hear and determine a matter, while venue, in the sense here used, relates to the particular county of the state in which the proceeding

must be heard, and when the proceeding is adversary, as under the new probate code, and all parties are before the court, the court will have jurisdiction to hear where the venue is, even though it does not have venue to administer the estate. (See Bartlett's Kansas Probate Law and Practice, §§ 997 to 1001.)

Our statute (G. S. 1943 Supp. 59-2203) very definitely fixes the venue as follows:

"Proceedings for the probate of a will or for administration shall be had in the county of the residence of the decedent at the time of his death; . . ."

This of course refers to one who died while a resident of this state. Throughout the history of our state a similar statute has been in force. See Laws 1862, ch. 91, § 2 (enacted in 1859) ; G. S. 1868, ch. 37, § 1; G. S. 1935, 22-301. The decisions of this court throughout the history of the state have been uniform in holding in effect that but one court is possessed of the power or authority to administer the estate of a resident decedent, and that that court is the probate court of the county of his residence at the time of his death.

(*Brubaker v. Jones,* 23 Kan. 411; *Perry, Adm'r, v. St. J. & W. Rld. Co.,* 29 Kan. 420; *Meyers v. Smith,* 50 Kan. 1, 31 Pac. 670; *Estate of Mallory v. B. & M. R. Rld. Co.,* 53 Kan. 557, 36 Pac. 1059; *Ewing v. Mallison,* supra; *Anderson v. Walter,* 78 Kan. 781, 99 Pac. 270; *Ekblad, Adm'r, v. Hanson,* 85 Kan. 541, 117 Pac. 1028; *In re Miller's Estate,* 90 Kan. 819, 136 Pac. 255; *Metrakos v. Railway Co.,* 91 Kan. 342, 147 Pac. 953; *Dresser v. Bank,* supra; *Ford, Adm'x, v. Peck,* 116 Kan. 74, 225 Pac. 1054; *Edington v. Stine,* supra; and see Bartlett's Kansas Probate Law and Practice, § 1001.)

There is nothing in our present general statute on this subject, or any of the earlier ones, to suggest that it is not in force in Wyandotte county as well as in all the other counties of the state; neither do any of the decisions cited contain such a suggestion.

Appellee, however, contends that notwithstanding the general statutes and decisions above mentioned he has authority to administer the estate in question by virtue of chapter 199 of the Laws of 1903, and the trial court's decision was predicated upon that view. We are unable to find that this act was ever published in the General Statutes of the state. In the General Statutes of 1909, following section 3436, is a note which reads: "Law providing for public administrator in Wyandotte county—see L. 1903, ch. 199." There is a similar note following section 4485 of the General Statutes of 1915. In the Revised Statutes of 1923, section 19-1104 reads:

"*Public administrator, Wyandotte county.* Laws 1903, chapter 199. Included by reference. (The title to this act is, 'An Act providing for a public administrator in Wyandotte county, specifying the cases in which he shall have authority to act as administrator of the estates of deceased persons, and defining his powers, duties and liabilities as such.' Act omitted as not of general application.)"

This is repeated in General Statutes, 1935, under the same section number.

In the probate code it was provided (G. S. 1943 Supp. 59-2601):

"Nothing in this act contained shall be construed to repeal or modify . . . the special administrator act for Wyandotte county (Laws 1903, chapter 199, being section 19-1104 of the General Statutes of 1935), and acts amendatory thereof or supplemental thereto."

As the title indicates, the statute is a local one, being limited to Wyandotte county. Section 1 of the act creates the office of public administrator for the county and fixes his term of office at two years, and provides for his election. Section 2 of the act reads:

"It shall be the duty of the public administrator to take into his charge and custody the estates in said county of all deceased persons in the following cases: *First.* Where any stranger or unknown person dies intestate in said county, or dies therein leaving a will and the executor therein named fails to qualify as such executor within thirty days after the death of such person. *Second.* When any person dies intestate in said county without any known heirs. *Third.* When any person dies intestate in said county, or in any other state or foreign country, leaving no known heirs in this state. *Fourth.* When any person dies in said county, or in any other state or foreign country, leaving no known heirs in this state, and leaving a will, and the executor therein named is not a resident of this state, or, being a resident thereof, fails to qualify as such executor within thirty days after the death of such person. *Fifth.* When any money, property, papers or other estate of any deceased person are left in said county in a situation exposed to loss or damage and no other person administers on the same. *Sixth.* When any estate of any person who dies intestate in said county or elsewhere is left in said county liable to be injured, wasted, or lost, when said intestate does not leave any known heirs in this state. *Seventh.* In any case in which the person or persons who, under the laws of this state, are entitled to letters of administration upon the estate of any intestate, shall appear before the probate court of said county and request said court to grant letters of administration upon such estate to the public administrator. *Eighth.* When from any other good cause the probate court of said county shall order him to take possession of any estate to prevent its being injured, wasted, purloined, or lost."

Section 3 requires the public administrator to apply to the probate court for authority and to give bond before he takes charge of any estate. Section 4 authorizes him, after having been appointed, to

continue the administration of the estate until it is settled or he is discharged.  Section 5 reads:

"The public administrator shall receive for his services the same compensation allowed by law to other administrators of the estates of deceased persons."

Section 6 provides that all the laws of the state relating to the administration of the estates of deceased persons shall apply to the administration of such estates by the public administrator.  Sections 7 and 8 provide for the appointment of the officer until an election can be held and for the filling of vacancies.  The statute does not purport to repeal any law of the state.

In 1908 the attorney general brought an action in quo warranto in the name of the state to have the statute declared invalid as being in violation of section 17, article 2 of our constitution, and alleging that it was being misused by defendant for the purpose of gaining fees to himself.  The allegations with respect to such misuse were denied and were not determined.  The decision was upon the plaintiff's motion for judgment on the pleadings.  The court held (*State, ex rel., v. Cox,* 79 Kan. 530, 99 Pac. 1128) that since the statute was enacted prior to the amendment of section 17, article 2 of the constitution in 1906, the "court is not required to determine" whether the statute was in violation of the constitutional provision.

In *Cox, Adm'r, v. Kansas City,* 86 Kan. 298, 120 Pac. 553, a wrongful death action brought by the public administrator, the court held that plaintiff's appointment as administrator of the estate of decedent was not open to collateral attack by defendant showing that the intestate left no property in the state except the suit of clothes he was wearing.  In the opinion it was said.

"Moreover, we regard the appointment of the administrator as sufficient against a collateral attack irrespective of the special statute.  The circumstance that Cox was the public administrator did not disqualify him for appointment under the general law, . . ."  (p. 300.)

The next appearance of the statute in this court was in *Judy & Gilbert v. Railway Co.,* 111 Kan. 46, 205 Pac. 1116, and *In re Gilbert and Judy,* 114 Kan. 57, 216 Pac. 1089.  These actions grew out of these facts:  In November, 1919, Louis R. Holbrook, whose home was in Howell county, Missouri, an employee of the Railway Company, was killed in a railroad accident in Johnson county.  He had a room in Wyandotte county, where he had a grip and some clothing and personal effects.  Earl E. Gilbert, then the public

administrator of Wyandotte county, he went to Holbrook's room, inventoried and took charge of his effects, investigated the cause of his death, had himself appointed administrator of Holbrook's estate, and then went further and made an agreement with the law firm of Judy & Gilbert, of which he was a member, to bring an action for the wrongful death of Holbrook in the district court of Wyandotte county. Thereafter the father of Louis R. Holbrook was appointed administrator of his estate by the probate court of Howell county, Missouri, sued the railroad company for the death of his son, and recovered a judgment, which was pleaded by the railroad company as a defense in an action brought by Gilbert, administrator, in the district court of Wyandotte county. As a result, that action was dismissed. Judy and Gilbert then sued the railroad company for fees upon their contract with Gilbert as administrator. The conduct of the public administrator and his law partner in that case brought about the disciplinary action in the later disbarment proceedings.

The public administrator was a party in the two cases involving the Ethan Zane estate. (*Nestlerode v. Commercial Nat'l Bank,* 121 Kan. 399, 247 Pac. 866, and *Wollard v. Home State Bank,* 121 Kan. 474, 247 Pac. 868. Also in *Wollard v. Peterson,* 143 Kan. 566, 56 P. 2d 476, and 145 Kan. 631, 66 P. 2d 375, and in *Horan v. Dore,* 146 Kan. 883, 74 P. 2d 147, and *Egnatic v. Wollard,* 156 Kan. 843, 137 P. 2d 188.)

The peculiar wording of the statute and the fact that the public administrator is paid only by fees in cases in which he is appointed tends to cause him to look for business, a practice which frequently leads to unsatisfactory results. It is doubtful if the statute serves any useful purpose that could not be accomplished under the general law, as the court stated was the case in *Cox, Adm'r, v. Kansas City;* supra. If so, it should be rewritten with those purposes in mind. When its validity was specifically attacked this court declined to pass upon its validity upon the theory that under the peculiar circumstances it was not required to do so. (*State, ex rel., v. Cox,* supra.) So, for a third of a century it has existed as a local statute of questionable validity, which may have been useful at times, certainly not so at others. We are not asked now to pass upon the validity of the act. Assuming it to be valid for some purposes, it must be construed in harmony with other statutes bearing on the

subject which also are in force in Wyandotte county, namely, the probate code. It will be noted that by section 2 of the act the public administrator is "to take into his charge and custody *the estates in said county* of all deceased persons in the following cases:" (Italics ours.) So far as this section is concerned, the most the public administrator could take into his custody would be that portion of the estate of the deceased which was in Wyandotte county. But he was authorized to do that only under certain conditions. Appellee relies upon the third and perhaps the fifth and sixth conditions. The third would have no application at all unless the deceased left property in the county. The fifth relates to money, property, papers, or other estate left in said county in a situation exposed to loss or damage, and no other persons administering on the same. The sixth provision also relates to the estate, of a person who dies intestate in the county, left in said county and liable to be injured, wasted or lost. Those situations do not exist here.

There is no contention that the authorities of St. Margaret's Hospital in Kansas City, where William R. Summerfield died, were likely to make way with or permit to be lost any of his personal property which he left there before an administrator could be appointed in an orderly procedure in the county of his residence. There was no unreasonable delay in having administration upon his estate in the county of his residence. The result is, the facts of this case present no warrant or authority under chapter 199 of the Laws of 1903, for the public administrator of Wyandotte county to take possession of the personal property and effects of the decedent within the county, or to proceed to have himself appointed temporary administrator of his estate; nor do they justify the court in holding the venue to administer the estate to be in Wyandotte county. Neither the facts nor the statute changed the venue for administering upon the estate from Ellsworth county to Wyandotte county.

To sustain the contention of appellee would be to hold in effect that the public administrator of Wyandotte county had the right and authority to administer upon the estate of any resident of any county in the state of Kansas who died in Wyandotte county, or elsewhere, leaving property in Wyandotte county. This contention cannot be sustained.

Some other questions are discussed in the briefs, but they are unimportant in view of the conclusion we have reached.

From what has been said it necessarily follows that the judgment

of the court below should be reversed with directions to enter judgment that the proper venue for the administration upon the estate of William R. Summerfield, deceased, is in Ellsworth county, and directing the proper record to be made as provided for in G. S. 1943 Supp. 59-2203. It is so ordered.